# Staunton

CHARLES ROWLAND HOFFECKER v. ERMA DEBNAM HOFFECKER.

September 10, 1958.

Record No. 4812.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Jerrold G. Weinberg* (*Louis B. Fine*, on brief), for the appellant.

*William E. Fulford*, for the appellee.

SNEAD, J., delivered the opinion of the court.

This is an appeal by Charles Rowland Hoffecker, appellant, from a decree denying him a divorce from Erma Debnam Hoffecker, appellee.

Appellant filed his bill on October 25, 1956, wherein he charged cruelty, and constructive desertion as of October 1955, and prayed for a divorce *a vinculo matrimonii*. In her answer and cross-bill, appellee denied the charges and alleged that appellant had deserted her in October 1955. She did not pray for a divorce, but asked for temporary and permanent support money as well as attorney's fees and court costs.

The cause was referred to a commissioner in chancery with direction to take the testimony and report his findings. Depositions of the witnesses were taken before him on December 5, 1956. Counsel for appellee was present, but offered no evidence on behalf of appellee and did not cross-examine appellant's witnesses as he was instructed by his client not to contest the suit.

On February 6, 1957 appellee was committed on petition of her sister to DeJarnette State Sanatorium in Staunton for drug addiction, and by order entered March 28, 1957 appellee's attorney, William E. Fulford, was appointed her guardian *ad litem*. On April 5, 1957 appropriate answer was filed by the guardian *ad litem* for appellee. From this stage of the proceedings the guardian *ad litem*, believing it was his duty to do so, opposed the granting of a divorce to appellant. No additional depositions were taken.

The commissioner filed his report on April 19, 1957 in which he found that appellant was not entitled to a decree of divorce. He recommended that a divorce *a vinculo matrimonii* be awarded appellee on her cross-bill. Appellant filed exceptions to the report. The court, by decree of June 27, 1957 sustained the commissioner's finding that appellant was not entitled to a divorce and overruled his recommendation that a divorce be awarded appellee as not being responsive to the pleadings. Appellant's bill was dismissed and appellee was awarded alimony of $175 per month on her cross-bill.

The question presented is whether or not appellant is entitled to a divorce.

The parties were married in the City of Norfolk on March 27, 1932. Appellant was a widower, 44 years of age, and appellee was a divorcee, 36 years of age at the time of their marriage. There were no children born of this union, but he has a daughter, Mrs. Helen H. Breyer, and a son, Rowland G. Hoffecker, who were born of his first marriage and she has a son, Robert D. Holland, born of a former marriage. Appellee's mother and a sister reside in Norfolk.

Appellant is a retired commander in the United States Navy. He is blind in one eye and had a cataract removed from the other in 1954. He owns no real property and has no funds other than his retirement pay. Appellee has no physical disability, and she owns the premises in Norfolk where the parties reside.

Appellee was hospitalized in 1938 and a drug known as Elixir of Terpin Hydrate and Codeine, which may be purchased without a prescription, was prescribed for her while there. Since that time, without medical advice, she has continuously used this narcotic drug over the objection of her husband. He has constantly pleaded with her to refrain from using it. She made many promises to do so, but all were broken. Appellant contacted a Mr. Florence of the Florence Drug Company at Ocean View and requested him not to sell her "Terpin Hydrate", and Mr. Florence in turn visited other drug stores in the neighborhood and conveyed the request with which they complied. There were, however, other sources of supply.

The record shows that appellee in recent years also consumed alcoholic beverages to excess. In respect to her heavy drinking, appellant stated "I would say, she was either getting over one or getting into one". When asked how often she became drunk, his response was: "The last summer I lived with her, daily."

Whenever appellant would reproach her for her drinking misconduct, she would inform him that she did not care for or love him. He said this occured almost daily during the summer of 1955. Another frequent expression which she continued up to the time of their separation in October 1955 was 'Get the hell out of here, you so and so. I don't love you, this is my house.'

As far back as 1945, appellee humiliated and embarrassed appellant. Walter Travis Barnes and Mrs. Barnes were close friends of the Hoffeckers. He testified that they made several trips to Army and Navy football games and that the last one they witnessed together

was in Baltimore. On that occasion appellee left her seat in the stadium during the first quarter of the game and did not return to it until late in the fourth quarter. He said she was under the influence of something and he presumed it was whiskey because she had been drinking it. As they left the stadium to return to their car, two sailors observed appellee's condition and yelled from the other side of the street to appellant, who was in his navy uniform: 'Hey, Commander, do you need any help?'

Barnes drove the car back home. He said appellee was so annoying to him that he stopped in Tappahannock and gave her the choice of either keeping quiet or getting out of the vehicle. He stated that he had been embarrassed on other occasions by her excessive drinking and that their visitations ended after the Baltimore trip. He expressed it in this manner: "We just could not take those annoyances and her drinking."

Appellant spent large sums of money on appellee as a result of her addiction to alcohol and drugs both before and after they separated. Since August 1950 she has been hospitalized, but not committed, on eight occasions in seven different hospitals and institutions.

Since 1954 appellee has neglected her household duties, and it became necessary for appellant to assume those duties. He stated: "I did the cooking and cleaning. I was the master-at-arms, I kept the house."

Appellant was asked by his counsel:

"Q. Now, as result of her drug taking and alcohol you have talked about, what effect has that had on your health?

"A. I have been unhappy and unsettled, and worried to death about the thing. I would not be able to sleep, because I did not know what would happen next, and that is what caused me to bring this suit. I got to the end of my rope, I can not take it any longer. If I lay down at night, I did not know what was going to happen, whether I would get some phone call. I just cannot take it any longer."

Due to her conduct, appellant became nervous and upset and he developed stomach trouble. He was treated by a physician for this ailment.

Dr. William Lyon Taliaferro, who was acquainted with appellee's condition, was asked by the commissioner:

"Q. What is the attitude of the Medical profession toward an addict or an alcoholic, such as I understand Mrs. Hoffecker is in this

respect, is she an ill person, or what category would she be placed in? Is it a disease, are they diseased persons, and treated as such?

"A. Some say yes, and some say no. I personally cannot look on it as a disease itself. Psychiatrists say yes. Some say yes, and then others say no."

Appellant returned from a visit with his daughter, Mrs. Helen Breyer, on October 10, 1955, and found appellee in a "stupor" which he said "just ruined me", and on the next day he departed and returned to his daughter's home in Arlington. The parties have not cohabited since that time.

Mrs. Breyer stated that appellee usually drank to excess; that on an occasion when she was not drinking she heard her stepmother tell her father in the summer of 1955 to leave the home and never return; that appellant was under a doctor's care for his "nervous stomach" for three or four months after their separation, and that since the separation his condition has greatly improved.

Rowland G. Hoffecker, son of appellant and a resident of Norfolk, visited the parties practically every week end in the summers of 1953, 1954 and 1955, together with his wife. He testified he did not recall a visit during that period that appellee appeared normal. He had observed her consume whiskey until she became sick. About once a month she would telephone him between one and three o'clock in the morning while she was in an abnormal condition. He stated that on one of his visits appellee cursed appellant and told him to "get his belongings out of the house, that she was no longer interested in having him around the home." At another time, after appellant had returned from Sunday School, she remarked that she did not think he was coming back and she hoped he would not. He said that later appellee requested that he and his wife not return to her home. He stated that these incidents upset his father considerably and were embarrassing to him as well as his father.

Elmer L. Nelson, a next door neighbor, testified on most of the occasions he saw appellee she was abnormal.

E. L. Cason, who was Chief of the Norfolk Police Department and a nearby neighbor of the Hoffeckers, stated that sometime in 1955 appellee returned home from a shopping trip driving another person's car, but it was the same model as their vehicle. Cason was requested by appellant to talk with his wife and have her understand she had taken the wrong automobile. He was not successful in his attempt to make her comprehend. Cason said she was "under the

influence of something", and she told him and appellant that both of them were crazy and suggested they get out of the house. In the meantime the owner of the car had reported it as stolen to the police. The situation was satisfactorily explained and no charges were preferred.

Since the evidence adduced was heard by a commissioner in chancery and not *ore tenus* by the chancellor, the decree of the trial court, while presumed to be correct, is not given the same weight as a jury verdict.

Section 8-250, Code 1950, provides as follows:

"The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence."

In commenting on § 8-250, Mr. Chief Justice Hudgins said in *Gilmer* v. *Brown*, 186 Va. 630, 642, 44 S. E. 2d 16:

"* * * Under the influence of this section, we have said that a report of a commissioner approved by the trial court is *prima facie* correct, or is entitled to great weight, or should not be disturbed unless its conclusions are at variance with the evidence. It is fundamental that, nothwithstanding the weight due a commissioner's report and the respect which is accorded his findings, neither the trial court nor this court should avoid the duty of weighing the evidence when its sufficiency is fairly challenged.* * *"

And in *Leckie* v. *Lynchburg Trust, etc., Bank*, 191 Va. 360, 364, 60 S. E. 2d 923, Mr. Justice Miller stated the rule to be:

"Though the court is by the statute given broad power of review over the findings of the commissioner, in so doing it is required to apply correct principles of law in evaluating the evidence and may not arbitrarily disturb the report if supported by competent and preponderating proof. The conclusion of the commissioner should not be upset unless upon a fair and full review according to correct principles of law it appears that the weight of the evidence is contrary to his finding. * * *"

When a cause is referred to a commissioner in chancery, the chancellor does not delegate his judicial function to him. He is appointed for the purpose of assisting the chancellor and not to supplant or replace him. It is the duty of the chancellor to weigh the evidence according to correct principles of law and arrive at his own conclusions. *Raiford* v. *Raiford*, 193 Va. 221, 229, 230, 68 S. E.

2d 888; *Green v. Green,* 199 Va. 927, 931, 103 S. E. 2d 202.

Thus it is manifest our duty is to evaluate the evidence under a correct application of the law to determine whether or not it supports the findings of the commissioner or the conclusions of the chancellor.

■ It is well established in this jurisdiction that violence and apprehension of bodily hurt are not indispensable ingredients in divorce suits charging cruelty, even though they usually appear.

It was said in the frequently cited case of *Ringgold v. Ringgold,* 128 Va. 485, 497, 104 S. E. 836:

"The husband has never offered any physical abuse or violence, and the wife has not claimed to have ever had any reason to apprehend bodily hurt. But violence and apprehension of bodily hurt, though nearly always appearing in suits for divorce on the ground of cruelty, are not indispensable ingredients of that offense. The authorities generally, including those in our own State, wisely allow for exceptional cases in which there may be extreme cruelty without the slightest violence. Mental anguish, repeated and unrelenting neglect and humiliation, may be as bad as physical wounds and bruises, and may be visted (sic) upon an unoffending spouse in such degree as to amount to cruelty even in the very strict sense in which that term ought always to be used in the law of divorce." See *Bisel v. Bisel,* 197 Va. 636, 638, 90 S. E. 2d 779; *Baytop v. Baytop,* 199 Va. 388, 392, 100 S. E. 2d 14.

In a number of jurisdictions habitual drunkenness or use of narcotic drugs is an independent ground for divorce. We do not have such a provision in our statutes. In the absence of provisions to that effect, it is not generally regarded, of itself, as a ground for divorce. However such habits, together with other misconduct, may constitute a case of cruelty. Nelson on Divorce and Annulment, 2d Ed. § 6.21, p. 270.

It is said in 27 C. J. S., Divorce, § 31, p. 561:

"Habitual intemperance does not of itself constitute cruelty, but misconduct caused directly or indirectly by habitual drunkenness or existing conjunctively therewith may constitute cruelty. * * *" See 17 Am. Jur., Divorce and Separation, § 60, p. 296.

We said in *Butler v. Butler,* 145 Va. 85, 88, 133 S. E. 756:

"The law does not permit courts to sever marriage bonds and to break up households merely because husband and wife, through unruly tempers, lack of patience and uncongenial natures, live unhappily together. It requires them to submit to the ordinary con-

sequences of human infirmities and unwise selections, and the misconduct which will form a good ground for legal separation must be very serious and such as amounts to extreme cruelty, entirely subversive of the family relations, rendering the association intolerable."

We adhere to that principle. In the case at bar the uncontradicted evidence shows that appellee's misconduct was very serious and amounted to extreme cruelty, rendering the marital relationship intolerable. Appellant, who was without fault, had every reason to say, among other things: "I got to the end of my rope, I can not take it any longer."

The decree appealed from is reversed and the case remanded for the entry of a decree of divorce *a vinculo matrimonii* in favor of appellant. An additional fee of $150 will be allowed the guardian *ad litem* for services rendered on appeal.

*Reversed and remanded.*