# Richmond

ROY TAYLOR HIGGINS v. MARYANN MERRICK HIGGINS.

June 15, 1964.

Record No. 5696.

Present, All the Justices.

Charles R. Cloud (*Joseph H. Campbell*, on brief), for the appellant.

William L. Parker (*Harry Nicholson*, on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

█ This is a divorce case in which the custody of children is involved. Mrs. Higgins, hereafter sometimes called the wife, filed a bill in chancery against her husband, Roy Taylor Higgins, in which she sought a divorce *a mensa et thoro*, alleging cruelty and constructive desertion. She prayed that the court grant her custody of the two children.

The husband filed an answer and crossbill denying the charges of desertion on his part and, alleging desertion on the part of the wife, he prayed for a divorce and custody of the children.

While the suit was pending an order was entered, consented to by the wife, granting temporary custody of both children to the husband.

The suit was referred to a commissioner in chancery who was ordered to take testimony in the case and report his findings to the court. At this point the wife announced that she would abandon her bill of complaint and would defend the crossbill only as it pertained to the custody of the younger child. After this announcement the husband filed a supplemental crossbill alleging adultery on the part of the wife in addition to the other charges. The wife answered the crossbill, denying the charge of adultery.

The commissioner heard the evidence and filed his report. He recommended that the husband be granted a divorce *a vinculo matrimonii* on the ground of desertion. He absolved the wife from the charge of adultery and recommended that the custody of Barbara, the younger child, be awarded to Mrs. Higgins. He made no mention of the older child.

Acting upon the report the court entered a decree on January 9, 1963 in which, in the main, he carried out the recommendations of the commissioner. The husband was granted an absolute divorce and was awarded the custody of Lee, the older child. The custody of Barbara was granted the mother, the decree providing that the husband pay $100.00 on the first and fifteenth of each month for the support and maintenance of Barbara. It was further provided that the commissioner be paid a fee of $600.00 and a fee of $1,500.00 be paid counsel for Mrs. Higgins, together with court costs.

From this decree the husband appealed. He vigorously contends that the court should have granted him the custody of Barbara, and he further challenges the fee allowed his wife's attorney, contending that the $1,500.00 allowance was excessive. He also contends that the court costs should have been apportioned between the parties and not charged solely to him.

The record discloses that these parties were married in Iowa on May 29, 1948; that the wife had been married before and had one child (Lee) by the previous marriage; that soon after the marriage the husband adopted Lee; that at the time this suit was instituted Lee was 17 years of age and Barbara, the child of the union, was 10 years of age.

The record further discloses that Higgins, a Commander in the United States Navy, was 39 years of age; that his net income was approximately $814.00 a month; that Mrs. Higgins was 38 years of age and had been profitably engaged in the real estate business for a period of five years prior to the suit.

The parties lived in Norfolk for approximately six years before the suit was instituted and Commander Higgins' duties required him to be away from home on various and sundry occasions.

It is disclosed that marital problems came to a head in 1958 when Mrs. Higgins allegedly confessed to her husband that she had an illicit relationship with a man by the name of Lille and that this relationship had continued over a period of time; that the opportunity for the relationship was presented by the wife's engagement in the real estate business and the husband's absence from home. This was testified to by the husband and was admitted by both Lille and his wife. It was denied by Mrs. Higgins. She contended that Lille and his wife, who had been friends of the family for some time, had ceased to be friends because Mrs. Higgins had sued Lille for a loan and that both had avowed that they would "get even with" Mrs. Higgins. It was undenied that Higgins had forgiven his wife for this

alleged infidelity and that they continued to live together under certain restrictions laid down by the husband.

It is disclosed that Mrs. Higgins' activity in the real estate business required her to be away from home much of the time and that she was constantly associated with men who were also engaged as real estate brokers. She concedes that her work required her to be out late at night and required her to keep irregular hours. She attended many real estate meetings and parties where it was customary to engage in eating and drinking with men.

Lee Higgins, the elder daughter of Mrs. Higgins and the adopted daughter of the husband, testified that her mother did not attend to the needs of the children; that when her father was away her mother kept late hours with men; that men came to her home and that on several occasions she observed her mother and various men kissing, drinking together and generally acting indiscreetly.

On September 13, 1961 Mrs. Higgins moved from the marital home and took with her the two children. She continued to keep late hours after her separation from her husband. On occasions the children were left by themselves and were required to fix their own meals. The older daughter, Lee, would have unchaperoned dates in her mother's absence. This continued for some time, after which the children returned to live with their father. After the children returned to their father Mrs. Higgins did not contact them until around Christmas 1961 when it appears that she seemed to concentrate her attention on Barbara, at which time Barbara declared her desire to be with her mother. She then returned to her mother with whom she lived all during the week, except on weekends which she spent with her father.

On May 31, 1962, at about 12:30 a.m. a room in a motor court was raided by police officers. These officers were accompanied by Higgins. The lights were out in the room. After a knock on the door a light in the bathroom was turned on. The evidence disclosed that the room was in a used and rumpled condition; that alcoholic beverages had been consumed there; that Mrs. Higgins and a man by the name of Beattie were occupying the room, both scantily clothed in underwear. At this time the husband charged his wife with adultery, which she denied. In her evidence she attempted to explain that she and Beattie had gone to the motel room for the purpose of discussing some real estate business; that while there she had decided to wash her hair after noticing that the motel had soft water, and that this accounted for her unclad condition.

328

The record further discloses that on another occasion the wife spent an entire night in another motel room with Beattie. She explained this in her testimony by saying that no improper conduct had occurred between them; that she was lonely and had gone to the room for the purpose of "crying on his shoulder".

The record is replete with evidence that in the husband's absence Mrs. Higgins kept company with men and at various times was seen in compromising positions with them; that she consumed alcoholic beverages to excess. We deem it unnecessary to go into detail concerning the several occasions in which Mrs. Higgins had been found in these compromising positions and where her conduct was anything but proper.

Suffice it to say that the record discloses that Mrs. Higgins was an unfit person to have the care and custody of a female child the age of Barbara. The child should not have been left in such an environment.

The commissioner's report to the court stated: "Your commissioner was much impressed with the straight forward testimony of Beattie denying any act of adultery had taken place [on the two occasions referred to]; * * * Your commissioner does not believe that the testimony pertaining to what happened at the motel is sufficient to support the allegations of adultery set forth in the supplemental cross bill." Citing *Holt* v. *Holt*, 174 Va. 120, 5 S.E. 2d 504; *Martin* v. *Martin*, 166 Va. 109, 184 S.E. 220; *Colbert* v. *Colbert*, 162 Va. 393, 174 S.E. 660.

The evidence in the cases cited by the commissioner nowhere approaches the incriminating evidence disclosed in the record before us. While it is true that the commissioner heard these witnesses testify and saw their demeanor upon the stand, an opportunity which was denied to both the chancellor and to us, we cannot escape the conclusion, from the cold print of the record, that Mrs. Higgins has been guilty of infidelity. Common sense and the common experience of men are used as our guide. "[C]redulity must not be stretched to the breaking point." *Johnson* v. *Johnson*, 154 Va. 788, 807, 153 S.E. 670, 676.

It is true that the conclusions of the chancellor should not be upset unless upon a fair and full review according to correct principles of law it appears that the weight of the evidence is contrary to his finding. When a cause is referred to a commissioner in chancery the chancellor does not delegate his judicial function to him. The commissioner is appointed for the purpose of assisting the chancellor

and not for the purpose of supplanting or replacing him. It is the duty of the chancellor to weigh the evidence according to correct principles of law and arrive at his own conclusions. Thus, in this case, it is our duty to evaluate the evidence and determine whether or not it supports the findings of the commissioner or the conclusions of the chancellor. See *Raiford v. Raiford*, 193 Va. 221, 229, 230, 68 S.E. 2d 888, 893, 894; *Hoffecker v. Hoffecker*, 200 Va. 119, 124, 125, 104 S.E. 2d 771, 775, 76 A.L.R. 2d 412; § 8-250 Code of Virginia 1950.

■ Certainly the rule in Virginia and elsewhere is that the mother is the natural custodian of her children of tender years, and if she is a proper person, other things being equal, the law favors awarding her custody especially when the child involved is a girl. *Brooks v. Brooks*, 200 Va. 530, 539, 106 S.E. 2d 611, 617, 618; 6 M.J. Divorce and Alimony § 55, page 326.

Under certain circumstances this rule is also applicable when the mother is not the innocent party and the divorce has been granted to the father. *Mullen v. Mullen*, 188 Va. 259, at page 272, 49 S.E. 2d 349, at page 355. See also 17A Am. Jur. Divorce & Separation § 189, page 15; *Campbell v. Campbell*, 203 Va. 61, 63, 122 S.E. 2d 658, 661.

However, in determining what is the best interest of a minor child whose custody is an issue between the parents, we must look to and consider the qualifications and fitness of the parents, their adaptability to the task of caring for the child, their ability to control and direct it, the age, sex and health of the child, its temporal and moral well being, as well as its proposed home and the influences likely to be exerted upon it. *Mullen v. Mullen, supra*, 188 Va., at page 270, 49 S.E. 2d, at page 354.

The ordeal of denying a parent, particularly a mother, the custody of a child is a solemn one, but when it is manifestly shown that the welfare of the child will be promoted by awarding its custody to the father or to a third party, then the duty of the court becomes clear and the custody of the child will be awarded accordingly. Thus the custody of a child may be awarded to a third person when it appears that neither of its parents is a fit and proper person to have its custody or that one of the parents is not a proper person to have the custody of the child and the other parent is unable to provide a suitable home for it.

It must be borne in mind that before a court can be justified in taking a child from its parents and placing the child in the hands of a third person the evidence must be convincing that the parents are

unfit persons to have the custody of the child or there must be a finding of special facts and circumstances constituting an extraordinary reason for taking the child from its parent, or parents. Nelson, Divorce and Annulment 2d ed. (1961) § 15.15, at page 248.

The evidence in this case shows the father to have been morally fit at the time of the hearing to have the care and custody of his infant daughter, now 13 years of age. While there is some evidence which would indicate that he is rather strict and demanding, it would appear that this might be for the good of the children and not to their detriment. It is significant that pending the trial of this case Mrs. Higgins consented to an order being entered granting the custody of both children to the father.

On the other hand, the evidence shows, and we so find, that Mrs. Higgins on the date of the decree appealed from, was not a suitable person to have the care and custody of a girl child the age of Barbara.

It is argued on behalf of Mrs. Higgins that: "The fact that the appellate court might feel that it would reach a different conclusion will not justify an invasion of the chancellor's prerogative. In the exercise of the discretion vested in him, the chancellor should be made to feel that it is his decision, rather than the decision of the appellate tribunal, that is called for."

We do not intend to deprive the chancellor of his right to pass upon the evidence but, as above stated, the evidence was not heard by the chancellor *ore tenus* and we are privileged to read the record as was the chancellor. We can also read the commissioner's report and after carefully doing so we feel that the chancellor erred in granting the custody of this child to the mother under the evidence and circumstances shown in the record before us.

We are therefore of the opinion to affirm that part of the decree granting Higgins a divorce *a vinculo matrimonii* from his wife, Maryann Merrick Higgins, and we reverse that part of the decree which grants Mrs. Higgins the custody of Barbara.

The case is remanded to the trial court with the direction that the custody of Barbara be awarded to her father, Roy Taylor Higgins.

If Mrs. Higgins later feels that she has so mended her ways that it will be to the best interest of Barbara that she have her care and custody then, in that event, under the influence and spirit of §§ 20-107 and 108 of the Code of Virginia 1950, she will be at liberty to file her petition with the court and have the matter of Barbara's custody redetermined according to conditions prevailing at the time

of the hearing. See *Forbes* v. *Haney*, 204 Va. 712, 716, 133 S.E. 2d 533, 536.

■ The remaining question in this case involves the allowance of attorney's fees, costs, etc. After carefully reviewing the record we are of the opinion that the fee of $1,500.00 allowed counsel for Mrs. Higgins in the trial court is excessive. It is here reduced to $1,000.00. A fee of $200.00 will be allowed Mrs. Higgins' counsel for services on this appeal. We are not inclined to disturb the generous allowance made to the commissioner.

For the foregoing reason the decree is affirmed in part, reversed in part and remanded with directions. The appellant having substantially prevailed on this appeal, the court costs shall be assessed against the appellee.

*Affirmed in part,*
*reversed in part and*
*remanded with directions.*