## CIRCUIT COURT OF SHENANDOAH COUNTY

William Frederick Cooper

v.

Marcia L. Cooper

February 7, 1984

Case No. (Chancery) 2150

By JUDGE PERRY W. SARVER

Set forth herein is the opinion of the Court after review of the pleadings; the report of the Commissioner in Chancery and exceptions filed thereto; the transcripts of the Commissioner's hearing filed in the cause, and after an *ore tenus* hearing with reference to corroboration of the grounds for divorce.

With regard to the last mentioned item, the Court contacted both Counsel of record on February 1, 1984, and advised Counsel that there was no corroborating evidence in the record relating to the grounds for divorce. The Court was advised that testimony was offered at the hearing with reference to corroboration by a witness called by the Complainant (herein referred to as Husband), however, due to a malfunction of the recording device, this witness's testimony was not transcribed as a part of the record. The Court then advised Counsel that the corroborating testimony should be a part of the written record or an *ore tenus* hearing should be had; so this matter was further heard *ore tenus* before the Court on February 2, 1984, at which time Janet L. Miller testified as a corroborating witness on behalf of Husband, and said witness duly corroborated jurisdiction of this Court, the necessary domicile and residence of the Husband and the grounds for divorce.

*Facts*

Husband and Defendant (herein referred to as Wife) were married on September 3, 1955, in the state of Maryland and resided in Maryland for a number of years before moving to Virginia in 1975. There were two children born of the marriage, and both are adult and fully emancipated. The parties lived together from the time of their marriage until April, 1980, at which time Wife moved from Virginia to Maryland, except for a very short time in 1975 when Husband suggested a trial separation when he was transferred to Virginia. Wife testified that her move in April, 1980, was at the insistence of Husband, was not voluntary and not in accordance with her wishes. Prior to her removal from Virginia, and between October, 1979 and April, 1980, husband had been at the marital home on a regular basis. Husband testified that he started seeing a female co-worker in 1977 and a very close relationship developed between the two which Husband testified developed into a "meaningful" relationship. He further testified that he moved into this person's home in October, 1979, although, he continued to return to the marital home on a regular basis up until April, 1980, as noted above. The marital home has been vacant since April of 1980 and Husband has continued to live with the female co-worker. Wife was a resident of Maryland at the time of the filing of this suit, and she continues to reside in Maryland. Husband continues to maintain the home and make the payments required in accordance with the terms of the deed of trust and note encumbering the property.

Husband has had the same employer since graduating from high school and his present salary is in excess of $30,000 per annum, he having earned a gross salary of $31,319.00 in 1981. Wife was primarily a homemaker, except for a short period of time (approximately one year) when they were first married. In 1970 she contracted multiple sclerosis and still suffers from the effects of this disease, is disabled, and receives Social Security disability benefits and for all practical purposes is unable to engage in gainful employment.

The marriage was generally stable throughout, except for a brief affair between wife and a high school friend in 1961 and a short term incident in 1965 involving both Husband and Wife with another couple. Though Husband

described the first mentioned affair as devastating to him, each of the parties subsequently condoned the actions of the other and the marital relationship continued. Husband stated that he, though the marriage was stable, their material needs being met, was generally dissatisfied, in that something was lacking between them, particularly with reference to satisfaction of his sexual needs. This situation was aggravated by Wife's health and was manifested by his desire for a trial separation in 1975 and culminated in his leaving the marital home in 1979 for the companionship of another woman.

### Findings

After due consideration of the transcript of the testimony offered at the Commissioner's hearing, and the Commissioner's Report and exceptions thereto, the Court finds that the Commissioner's Report should be sustained in part and rejected in part. The Court is mindful of the provisions contained in Code Section 8.01-610 which states as follows:

> *Weight to be given commissioner's report.* - The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence.

It is further stated in *Hoffecker* v. *Hoffecker*, 200 Va. 119, 104 S.E.2d 771 (1958), "when a cause is referred to a commissioner in chancery, the chancellor does not delegate his judicial function to him. He is appointed for the purpose of assisting the chancellor, not to supplant or replace him. It is the duty of the chancellor to weigh the evidence according to correct principles of law and arrive at his own conclusions."

This Chancellor finds that after review of the evidence and viewed in light of the provisions of Code Section 20-107.1 and Code Section 20-107.3, that the lump sum payment set forth in Paragraph IV(C) should be treated and considered as a part of the equitable distribution set forth in subsection (B) of said Paragraph IV. The Court also rejects the Commissioner's findings set forth

in subparagraph (E) of said Paragraph IV, relating to an award of attorney's fees to Wife.

## Marital property and equitable distribution

All property has been divided to the satisfaction of the parties with the exception of the marital residence situated near Woodstock in Shenandoah County and titled in the names of both parties as tenants by the entirety, and a debenture issued by Husband's employer, titled solely in the name of Husband, having a value of $9,000.00 and coming within the context of Code Section 20-107.3(A)(2)(ii), but Husband concedes that said debenture is marital property and it would appear from the evidence that it does not meet the requirements of separate property as defined in subsection (A)(1) of Code Section 20-107.3. The house, the Court finds, has a value of $66,000.00 which is substantiated by an appraisal filed in the cause and is subject to a first lien deed of trust which secures a note payable to Old Dominion Savings and Loan Association having a balance due thereon of approximately $25,000.00.

Considering those factors set forth in said Code Section 20-107.3(E), and Items 1 through 10, inclusive, the Court finds that the marital property should be divided equally. The contributions in acquisition of said items of marital property were monetary, or through the rendering of services to the employer in the case of the debenture, as to the Husband, and non-monetary insofar as the Wife is concerned. The evidence showed that the Wife was employed outside of the household for only a short time during the early part of the marriage, and during most of the marriage was a homemaker, this being the wish of both Husband and Wife, and the evidence is uncontradicted that she was an effective and good homemaker, wife and mother. The parties owned approximately three houses during the course of the marriage and each time a house was sold the equity of the previous house was used to purchase the new house. Through the joint efforts of both parties, they were able to live a comfortable life with all of the necessities and some luxuries with each contributing to the well-being of the husband-wife and total family relationship.

With regard to Paragraph (E)(3), the parties were married, as noted above, in 1955 shortly after graduat-

ing from high school and they lived together as husband and wife until October, 1979, and then during the period October, 1979 to April, 1980, the question as to whether they cohabited is open to question, but without doubt the parties ceased cohabitation as husband and wife in April, 1980; therefore, the parties enjoyed a marital relationship, though imperfect in some respects, for the major portion of their adult life with the Husband being the sole means of financial support of the family unit and with the wife running the household in a most satisfactory manner according to the evidence.

With regard to the ages and physical condition of the parties (subparagraph (E)(4)), Husband is of the age of 49 years and Wife is 46. There is no evidence that Husband is other than in good health, while Wife suffers from multiple sclerosis, a condition which has existed since 1970. Wife is not totally disabled from the standpoint of being unable to care for herself as she lives alone and is able to take care of her needs and has done so since April, 1980. She is quite limited in her activities outside of the home and, according to the testimony of Dr. Stanisky, she is unable to pursue any full-time employment and she is, in fact, receiving disability compensation from the Social Security Administration of $389.00 per month as a result of her physical condition, as noted previously. Therefore, with the exception of her Social Security income, wife is totally dependent upon Husband for support.

Considering subparagraph (E)(5), the marriage was stable throughout except for two incidents of unfaithfulness, one by the Wife and the second in which both parties were involved with another couple. Both of the foregoing incidents were condoned by each of the parties and there was a "forgive and forget" attitude and although the Husband testified that there was something lacking in the marriage, primarily from the sexual standpoint, they seemed to have a close relationship, and a deep respect for each other which continued even up to and including the time of the hearing and the Court has no reason to believe that there is other than deep feeling and respect between the parties at the present time. As noted above, the Husband sought to fulfill the needs that were lacking in the marriage relationship with a female co-worker and a relationship developed which has continued and was continuing at the time of the Commission-

er's hearing. It would appear that the prior incidents that occurred in the early 1970's, the instances of infidelity as mentioned above, were not contributing factors to the last separation of the parties and that the prime reason was Husband's relationship with the female co-worker. Even after Wife became aware of this relationship, she was willing to forgive Husband and attempt to resume the marriage relationship, however, this Husband was not willing to do and he insisted that she leave the marital home and establish a residence in Maryland.

The Court will not address subparagraph (E)(6) since this is covered above. Nor is it necessary to cover (E)(7) since the parties are virtually debt free with the exception of the note secured by deed of trust on the marital residence. Husband does participate in a retirement plan through his place of employment, and as of November 30, 1982, he had accrued an annual benefit of $1,886.43 with monthly payments to commence upon his normal retirement date, which date was not introduced into evidence. The Court does not make an award based upon the value of the retirement benefit, since it feels a fair distribution of the marital property can be obtained without taking the retirement benefit into consideration, and further since it would be some years before any such benefits are receivable and any such present award should be based upon Husband's present earnings and ability to pay. In addition, Wife has not requested that retirement benefits be made a consideration.

With regard to (E)(9), the two assets to be divided among the parties (the marital home and the debenture) are not liquid assets; therefore, a method of payment will have to be devised and this method is set forth herein. Husband has indicated that he wishes to purchase Wife's interest in the marital residence and pay to her such amount as the Court directs is her share pursuant to Code Section 20-107.3. In this case there will be tax consequences to Wife, therefore, the Court will set forth an installment method which should help minimize the tax consequences to Wife and at the same time perhaps be advantageous to Husband, (E)(11). The Court finds no other matters, either necessary or appropriate to be considered as set forth in (E)(11).

After considering all of the foregoing factors, it is the opinion of the Court that the property should be divided equally between the parties. That is to say,

Wife's interest in the debenture shall be $4,500.00, and Wife's interest in the real estate shall be one-half of the equity value in the marital residence determined by taking the assessed value of $66,000.00 and deducting therefrom the balance due and payable under the terms of the note secured by first lien deed of trust and with the unpaid balance on said note to be determined at a fixed period of time, which shall be the date of the entry of the final decree in this cause, or such other date as the parties can agree upon. Husband, in accordance with his expressed wishes, shall purchase Wife's interest in the marital residence and will pay to her one-half of the value of the debenture since the same is not readily redeemable and may only be redeemed under special circumstances or upon termination of his employment with his present employer. Therefore, it is the Order of the Court that Husband pay unto Wife the aforesaid sum of $4,500.00, at the time of entry of the final decree, plus one-half of her equity interest arrived at in accordance with the foregoing formula with 25% of the total amount due Wife as her one-half share of the marital home being payable on entry of a final decree of divorce and delivery of a general warranty deed, executed by wife, and the remaining balance being paid by Husband to Wife in 60 monthly installments with interest thereon at 12% per annum on the unpaid balance. The Court notes that 12% is the present judgment rate of interest as provided in Code Section 6.1-330.10, and finds that Wife should receive interest in an amount at least equal to the judgment rate.

Realistically, the monthly payment shall be based upon a twenty year amortization schedule, but the parties are given leave to utilize any such schedule to which they may mutually agree. Said note shall be secured by a deed of trust, prepared and recorded at Husband's expense, and shall be subordinate only to the existing first deed of trust securing the note payable to Old Dominion Savings and Loan Association.

*Spousal support pursuant to Code Section 20-107.1*

Having decided the question of distribution of the marital property, the Court now addresses the maintenance and support to be paid by Husband to Wife. Said Code Section 20-107.1 sets forth nine factors that the

Court must consider in establishing support and maintenance, most of which were considered in the distribution of the marital property. Upon payment by Husband to Wife of the cash sums to be paid at the time of the entry of the decree and the payments pursuant to the terms of a note to be secured by a second lien deed of trust on the real estate and the subsequent payments of principal and interest which will accrue to Wife, she will have separate property and will have additional income along with her Social Security disability payment.

Considering these factors, the Court finds:

(1) With the exception of Wife's Social Security disability benefits, and the interest income that will accrue to her under the marital settlement, she has no income. Taking this into consideration and considering the evidence presented at the Commissioner's hearing, the Commissioner's award of $600.00 per month for spousal support is clearly justified.

(2) Wife is unable to work, as testified to by her doctor, so even if she had the education and training to enable her to seek and obtain employment, her physical condition prevents her from so doing.

(3) The parties enjoyed an above average standard of living and Wife is entitled to maintain this standard and the Court is of the opinion that with the assets received and receivable from the marital property division, coupled with spousal support and Social Security disability income she will be able to do so.

(4) The Court will not address (4) duration of marriage; (5) age, etc. of the parties; (6) the contributions, etc. to the well-being of the family; (7) the property interests of the parties, etc.; (8) provisions concerning marital property; (9) other factors, including tax consequences, since all have been covered in other parts of the opinion.

The Court is not unmindful of Wife's physical condition and her Counsel's argument that the marital residence should be awarded to Wife along with a larger monthly sum for spousal support since her condition will worsen in the future. The Court is of the opinion that the distribution of the marital property, the setting of the monetary award, and the amount of the spousal support must be based upon those factors in Code Section 20-107.1 (Items 1-9, inclusive) and Code Section 20-107.3(E) (Items 1-11)

as they relate to the total history of the marital relationship of the parties up to and including the present time.

Wife's future needs are speculative at this time and it is impossible for the Court to make any award, either under Code Section 20-107.3 or Code Section 20-107.1, based upon what her future needs may be. The Court reviewed the transcript of the testimony of Dr. David Satinsky, who has treated Wife since 1972 when she first contracted multiple sclerosis. He testified concerning Wife's condition as follows:

> Multiple Sclerosis. . . tends to follow a progressive course in the vast majority of patients; that is to say that they are generally noticeably worse off neurologically after many years have gone by than they were at the beginning. . . . (Tr., P. 3)

> I would say she has done slightly better than average. . . . (Tr., P. 3)

> [U]nless the cure is immediately forthcoming she will slowly get worse and somewhere down the road perhaps in a small number of years, and that is very hard to predict with any certainty, she will be at least part of the time requiring a wheel chair. (Tr., P. 5)

> There will be a time when she will be unable to live independently alone. What happens to her at that point I don't know, that becomes a social issue. She could be in a nursing home, she could have a companion live with her seven days a week, twenty-four hours a day, you see there are options besides nursing homes. (Tr. P. 5)

The Doctor further testified on page 5 of his transcript that Wife was not under daily medication and that physical therapy would help her.

Should Wife's condition change in the future requiring increased spousal support, then she may petition the court for such increase pursuant to Code Section 20-109.

*Attorney's fees*

The Court rejects the findings of the Commissioner, and finds that Wife should recover from Husband the sum of $1,200.00 as attorney's fees. The Court has reviewed the affidavit filed by Wife's attorney setting forth his time expended in this cause. Taking into consideration all of the financial considerations set forth in this opinion, it is the ruling of the Court that Husband should not be required to pay all of Wife's attorney's fees but some portion will have to be borne by her.

*Other*

By statement filed with the Court on August 17, 1983, the Commissioner advised that there was a balance due him of $270.00 as his Commissioner's fee. The Court orders that Husband pay this amount prior to the entry of the final decree and the Commissioner shall advise the Court when this amount has been paid.