## CIRCUIT COURT OF SHENANDOAH COUNTY

Ronald Leo Smoot

v.

Elizabeth Lam Smoot

May 29, 1984

Case No. (Chancery) 2232

By JUDGE PERRY W. SARVER

Set forth herein is the ruling of the Court with reference to the exceptions of the Report of the Commissioner in Chancery, all filed herein.

### Weight to be Given Commissioner's Report

In view of the fact that the exceptions filed by both parties to the Report of William B. Allen, III, are substantial, and address most all of the major issues in this case, the Court deems it appropriate first to

comment on the weight to be accorded to the Report pursuant to Code Section 8.01-610 and the annotations following.

> Code Section 8.01-610 - The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject in whole or in part, according to the view which it entertains of the law and evidence.

Thus, while the report of a commissioner in chancery does not carry the weight of a jury's verdict, it should be sustained unless it plainly appears, upon a fair and full review, that his findings are not supported by the evidence. *Strauss* v. *Princess Anne Marine & Bulkheading Co.*, 209 Va. 217, 163 S.E.2d 198 (1968).

It is also stated in the annotations that:

> When reports of commissioners in chancery are objected to, it is the duty of the court to examine the evidence returned by the commissioner, and upon which his conclusions are based, and review his conclusions. If the evidence consists of depositions which have been taken by the commissioner, or in his presence, and is conflicting, and his conclusions are clearly supported by competent and unimpeached witnesses, his report will not be disturbed, unless it is clear that the weight of the testimony is contrary to his conclusions. But, even in such case, the court will review and weigh the evidence, and, if not satisfied with the findings of the commissioner, will overrule them. The report will only be accepted as conclusive when the testimony, though conflicting, is evenly balanced, and the report is supported by the testimony of competent and unimpeached witnesses. *Diebold & Sons' Co.* v. *Tatteson*, 115 Va. 766, 80 S.E. 585 (1914). (Other citations omitted.)

The Court further notes in the annotations that:

> When a cause is referred to a commissioner in chancery, the chancellor does not delegate

his judicial function to him. He is appointed for the purpose of assisting the chancellor and not to supplant or replace him. It is the duty of the chancellor to weigh the evidence according to correct principles of law and arrive at his own conclusions. *Hoffecker* v. *Hoffecker*, 200 Va. 119, 104 S.E.2d 771 (1958). (Other citations omitted.)

The Court will now consider the exceptions filed to the Commissioner's Report, rule on the exceptions, setting forth the reasons for such ruling. Respondent's exceptions will be addressed first, since the Court's ruling on these exceptions will also address reasons for ruling on the Complainant's exceptions.

It is noted that the Court found it necessary to read the entire transcript, and do independent research, since the Commissioner did not fully set forth his reasons for his findings and Counsel did not set forth case citations in support of their exceptions; although Respondent did cite the *Robertson* v. *Robertson*, 215 Va. 425, case, and by separate memo cited the *Harper* and *Ayars* cases, both being Maryland cases dealing with equitable distribution. The Court reviewed both of these cases, and, in addition, *In Re Marriage of Rogers*, (Ill.) 422 N.E.2d 635; *Schweizer* v. *Schweizer*, 462 A.2d 562 (Md. App. 1983); *Hall* v. *Hall*, 462 A.2d 1179 (Me. 1983); *Report of the Joint Subcommittee Studying Section 20-107 of the Code of Virginia to the Governor and the General Assembly of Virginia*, House Document No. 21; *Allocating the Fruits of a Marriage: A Look at Virginia's New Domestic Relations Statute*, 17 U. Richmond Law Rev. 347.

### Respondent's Exceptions

(1) *Grounds for divorce*: the first exception is sustained. The Court finds that, after a review of the transcript, although grounds of divorce exist in favor of Complainant pursuant to Code Section 20-91(9), Respondent has proven those charges in her cross-bill alleging desertion. However, the Court is of the opinion that the evidence introduced by Respondent at the Commissioner's hearing does not meet the burden of proof to establish adultery. Respondent complains that her cross-bill alleging desertion and/or adultery was not addressed in the Report,

and this complaint is well-founded. The Commissioner should have addressed these allegations, and since they were not, this Court will now do so.

Concerning the allegation of adultery, the Court finds that the evidence is insufficient to sustain these allegations applying those standards set by the Supreme Court in *Dooley* v. *Dooley*, 222 Va. 240 (1981), and *Coe* v. *Coe*, 225 Va. 616 (1983).

The court stated in *Dooley* at page 246 that:

> To establish the charge of adultery the evidence must be full and satisfactory -- the judicial mind must be convinced affirmatively. The proof should be strict, satisfactory and conclusive . . . . A charge of adultery is one of a criminal offense and especially and uniquely damaging to the reputation of the party charged. The general and widely recognized presumption of innocence must be indulged against it, and while it is not required to be proved beyond a reasonable doubt, as in a criminal proceeding, the evidence must be at least clear and positive and convincing. Raising a considerable or even strong suspicion of guilt is not enough.

The Supreme Court further stated in *Coe* at page 622 that:

> While a court's judgment cannot be based upon speculation, conjecture, surmise, or suspicion, adultery does not have to be proven beyond all doubt. The evidence must be clear and convincing, based upon proven facts and reasonable inferences drawn from these facts.

The Court finds that the evidence presented is less than that before the court in *Dooley*, wherein the divorce was denied on the grounds of adultery. The only evidence is that there was, without question, a relationship between Complainant and Jacqueline Sullivan, however, the extent of the relationship was not clearly shown in the evidence. Complainant admits having dinner with her on one occasion in Harrisonburg, and purchasing a necklace for her as a thank you for her support of his basketball team. In addition, Complainant admitted to talking with

her on numerous occasions at the school where both were teachers. Other witnesses testified that Complainant was seen with Ms. Sullivan at various times and places in Shenandoah County. One witness, Roscoe Price, who has dated Respondent subsequent to the parties' separation, stated that he went to Shenandoah, Virginia (Ms. Sullivan's home) at Respondent's request to see if he could observe Complainant's car in Shenandoah (Tr. p. 153). Complainant arrived first, parked his car at a residence, Ms. Sullivan arrived later and both parties entered the house. The witness then left. He testified on cross-examination (Tr. p. 155) that the time was 8:00 to 8:15 (he does not say whether it was a.m. or p.m.) and since he left immediately, there was no testimony as to how long they remained in the house. The Court also notes that there was no testimony as to the ownership of the house, or its occupants, or whether or not Complainant and Ms. Sullivan were in the home alone.

The Court further notes that Complainant exercised his rights under the Fifth Amendment when questioned with regard to having sexual relations with Ms. Sullivan and spending the night with her in Shenandoah (Tr. pp. 100 and 101).

Respondent says that by invoking the Fifth Amendment privilege against self-incrimination, an inference can be drawn that the adultery did, indeed, take place.[1] At best, this Court finds that the action taken by Complainant to invoke his Fifth Amendment right is a matter that the Court can consider, along with other evidence, to establish adultery under the standards of proof set forth in *Dooley* and *Coe* and the other cases cited therein. However, in the case at hand, the Court finds that these standards have not been met. The evidence before the Court is that Complainant invoked the Fifth Amendment when asked whether he had sexual relations with Ms. Sullivan, and other evidence that shows Complainant to be not innocent of suspicion, nor of imprudence, nor of questionable conduct; but such does not make out adultery under the existing case law in Virginia.

---

[1] Since drafting this opinion, the Honorable Robert K. Wolts has addressed the question of a party in a divorce action asserting the privilege against self-incrimination and the inference that may be drawn therefrom. Enclosed is a copy of his opinion.

With regard to the grounds of desertion as alleged in Respondent's cross-bill, the Court does find the evidence sufficient to sustain this allegation. Therefore Respondent's Exception (1) to the Commissioner's Report is sustained as to her right to a divorce from the bond of matrimony on the grounds of willful desertion. The evidence shows a marriage that was, and had been, foundering for sometime. Although Respondent, by her own testimony, stated that she had asked Complainant for a divorce in 1979, and on other occasions but that he always said no, that he loved her too much and did not want to live without her, and the marriage relationship continued.

Respondent identified four primary problem areas in their marriage, sexual problems (they were not compatible); failure to agree on how they would spend their money (Tr. pp. 210 and 211); mother-in-law problems with Complainant's mother (Tr. pp. 201 and 202); and Complainant spending too much time running around with the guys (Tr. p. 202). Complainant did not disagree with this categorization. The foregoing are insufficient reasons for either party terminating the marriage, and while the marriage was not a happy relationship between the parties, no action was taken by either of the parties to terminate the relationship until Complainant's relationship with Ms. Sullivan commenced. Neither party had just cause or excuse to leave the marital home and abandon the marital relationship, and the one so doing was subject to an allegation of willful desertion or abandonment, and this Complainant has done.

*Robertson* holds that a court is not required to grant a divorce under the two-year (now one-year) separation statute to the exclusion of all other proven grounds (*id.*, at 427). The court stated on page 426 that it could find nothing in Code Section 20-91(9), or any other portion of the divorce law, which suggests legislative intent to give precedence to one proven ground of divorce over another.

The Court holds that in view of Complainant's assertion of his privilege against self-incrimination, an inference can be drawn that he willfully deserted or abandoned the marriage relationship and his continuation of this relationship with Ms. Sullivan, at least up to the time of the Commissioner's hearing, shows his further intention never to resume matrimonial cohabitation with Respondent. While all was not well between the parties,

there is no evidence that Respondent consented to the separation. Desertion can only be complained of when it is against the will of the party who is deserted. *See Arrington* v. *Arrington*, 196 Va. 86, at page 92.

(2) *Credit to Complainant*: with regard to Respondent's second exception, the Court overrules this exception and sustains the Commissioner's finding that Complainant receive a credit or be reimbursed the sum of $20,000.00 for funds contributed by him, from his separate property, for construction of the improvements on the lot (herein referred to as the marital home) owned by the parties as joint tenants, and acquired by deed dated July 25, 1975, and recorded in Deed Book 340, page 314 of the Clerk's office of the Circuit Court of Shenandoah County. (Complainant's Exhibit 1, Commissioner's Report).

There is no question but that the marital home is marital property as defined in Code Section 20-107.3(A)(2). Under Paragraph B, both parties are deemed to have rights and interests in this marital property and such are to be used as a consideration in determining a monetary award, if any, as provided in this section.

Pursuant to Paragraph D, the court may grant a monetary award based upon the equities and the rights and interests of each party in the marital property. The Court then comes to Paragraph E, which states that the amount of the award and the method of payment shall be determined by the court after consideration of eleven factors.

Respondent stated in her testimony that she wished to keep the house (Tr. p. 271). The Court assumes that there has been no change in her position.

The Court observes, from a review of the notes taken at the hearing of argument on the exceptions to the Commissioner's Report, that each of the parties would like to retain the marital home. If there can be no agreement as to who shall have title to the property, then the Court will have no choice but to order partition by way of sale (since the property cannot be partitioned in kind) and a division of the proceeds as hereinafter provided, pursuant to Paragraph C of Code Section 20-107.3. Therefore if the parties are unable to agree, Counsel shall provide for partition in the final decree. Regardless of whether one of the parties purchases the interest of the other or the real estate is partitioned

by sale to a third party, the equities of the parties in and to the marital home are arrived at as follows:

a) The value of the real estate is $89,000.00 as found in the Commissioner's Report.

b) The principal amount due on the note secured by the first lien deed of trust and the $20,000.00 credit in favor of Complainant shall be deducted therefrom. Respondent shall be entitled to a credit of $991.46 for improvements and repairs made by her as shown on that list filed with the Court on February 28, 1984, by letter from Counsel dated February 27, 1984. The remaining items are disallowed since they are normal everyday expenses relating to the use of the premises and which would ordinarily be incurred by a tenant in a landlord-tenant relationship. Complainant, by Counsel, also agreed that Respondent should be entitled to $1,000.00, which sum went towards the original purchase of the real estate, so this total credit would be $1,991.46. (See Mr. Neal's letter to the Court dated March 2, 1984.) The sum remaining shall accrue one-half each to the parties.

No allowance is made for the deed of trust payments made by Respondent, since she claimed all interest payments as a deduction on her income tax returns and has had the use of the property since the parties separated.

c) If the parties are in agreement as to one taking the marital real estate and paying to the other the amount due as calculated above, the conveyance shall be by general warranty deed with English covenants and, if the existing deed of trust lien is assumed, the party conveying his or her interest shall be released by the lending institution from any further responsibility to pay said indebtedness unless he or she shall waive this requirement. Upon refusal of the lending institution to do so, then partition by sale shall be necessary.

The amount of the award is arrived at after consideration of the eleven factors in Code Section 20-107.3 mentioned above, and the Court will comment briefly concerning these factors.

The parties' contributions to the well-being of the family unit were equal. Their salaries were approximately the same. During the time of the construction of the marital home, Complainant's salary went to the house while living expenses were paid for from Respondent's salary.

With regard to the second factor, it is the Court's opinion that Complainant should receive credit for the sum of $20,000.00, as found in the Commissioner's recommendations. To hold otherwise would totally ignore this particular factor. As noted above, the parties pooled their salaries with the husband's going to the house and the wife's to living expenses. All things were equal with the exception of Complainant's $20,000.00 expenditure of funds from separate property representing a portion of the proceeds received by him from a personal injury settlement prior to the marriage. As Counsel well know it is necessary to look to other jurisdictions for case law to assist in arriving at a decision.

The Court is further of the opinion that for the second factor in Paragraph E to have any meaning a source of funds theory, such as that enunciated by the court in *Harper* v. *Harper*, Md., 448 A.2d 916, must be considered. Though the facts were somewhat different, in that in *Harper* the real estate was titled in the name of the husband, the principles set forth therein should be applied in the case at hand to achieve an equitable result. Had the Virginia Legislature intended that the parties' respective monetary contributions to the acquisition of marital property not be considered and the source of funds ignored as a consideration in equitable distribution, then there would be no need for this second factor.

In *Harper* at page 929, the court concluded that under the Maryland Act providing for equitable distribution the appropriate analysis to be applied was the source of funds theory. Under that theory, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. A spouse contributing nonmarital property is entitled to an interest in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment. Considering all of the evidence in the case at hand, equity is achieved by allowing Complainant to recover the $20,000.00 expended by him on the marital home.

The Court finds that the duration of the marriage (approximately seven and one-half years) is not a factor in arriving at other than an equal distribution of the property after applying the credits provided above.

Likewise, both parties are in good physical and mental health and their respective ages are not a factor.

Though Complainant has been found at fault, the total relationship between the parties does not dictate that a division different than as set forth should be made.

The Court is concerned only with the marital home, by agreement of the parties, thus factor six has been considered in connection with factor two as addressed herein previously.

The Court does not consider the seventh factor as bearing upon the facts at hand. Though Complainant has certain debts, as shown by the evidence, no request has been made that such be considered as a factor.

The eighth factor is not an issue before the Court. The Court notes that both parties are employed by public school systems, though in different counties, and their retirement benefits are approximately the same.

The ninth factor is not a matter bearing on the Court's decision since the marital home is the sole marital property before the Court.

With regard to the tenth factor, the only tax consideration would be the consequences of the sale of the marital home to either one of the parties, or to a third party if partition by that mode is necessary. The Court will favorably consider a method of sale that is mutually advantageous to the parties in accordance with the findings set forth herein.

The Court finds no other factors necessary or appropriate to consider.

### Complainant's Exceptions

(1) The first exception is denied. Spousal support to Respondent shall be reserved pursuant to Code Section 20-109. The Court notes that the parties' respective earning capacities are equal, but that Respondent has attained a higher level of education and if Complainant did not hold part-time jobs his earnings would be less. Therefore there would have to be a change in circumstances before an award of spousal support at some future time

would be justified, considering all of the factors set forth in Code Section 20-107.1.

(2) The second exception to the Commissioner's Report concerns an award of attorney's fees in the sum of $1,500.00. Though the Court has found that the parties' earnings are substantially the same, the Court has found Complainant to be at fault and requiring Respondent to defend this action by Complainant's initial filing of a bill of complaint. Considering all of the evidence and the parties' respective financial position, the Court does not feel Complainant should bear all of Respondent's attorney's fees as claimed by her, nor for that matter all of the costs of this proceeding. Therefore the Court further holds that each shall bear one-half of the cost of the reference to the Commissioner in Chancery. It is in the discretion of the Court to award attorney's fees, and the Court feels that the foregoing award is justified considering all of the evidence. *See Thomas v. Thomas*, 217 Va. 502, and *Wilkerson v. Wilkerson*, 214 Va. 395.

(3) Having held that husband is entitled to recover the sum of $20,000.00 expended from his award for personal injuries, the Court finds it unnecessary to address those two exceptions since Complainant stated in his exceptions that a ruling was requested on these two matters [3(i) and (ii)] only if the Court failed to allow Complainant the $20,000.00 prayed for in his bill of complaint.

Having now ruled on all matters contained in the exceptions the Court directs Counsel for Complainant to prepare a decree, noting Counsels' objections to the rulings of the Court, if they be so advised, and covering the following matters:

(1) The Commissioner's findings numbered 1 through 8 shall be set forth therein. It is noted that Respondent challenges the finding that the separation took place on February 15, 1982, but the Court so finds based upon the testimony of Mildred Dellinger, the least biased of all the witnesses who testified on this point, and who seemed quite meticulous in her record keeping, thus furnishing substantial reliability to her testimony on this point.

(2) The divorce shall be awarded to Respondent on the grounds of willful desertion as alleged in her cross-bill.

(3) No award of spousal support shall be made, the Court finding that wife is not entitled to such support based upon those factors set forth in Code Section 20-107.1, but the same is reserved to wife based upon a change in circumstances pursuant to Code Section 20-109.

(4) Disposition of the marital home in accordance with the findings of the Court in addressing Respondent's Exception (2).

If the parties are unable to agree as to which party will retain the marital home and pay to the other the amount to which he or she is entitled, it clearly appearing that partition cannot be made in kind, then said decree shall provide that said real estate will be offered for sale at public auction, after due notice of the same by advertising once per week for four successive weeks in a newspaper of general circulation in Shenandoah County and by such other advertising as the special commissioners deem appropriate. For that purpose Paul J. Neal, Jr., Esquire, and William H. Ralston, Jr., Esquire, are appointed Special Commissioners, and they shall post bond in the sum of $89,000.00, with corporate surety approved by the Clerk of this Court before proceeding with said sale.

(5) The attorney's fees awarded to Counsel for Respondent shall be payable at the time of closing, whether said closing is by conveyance between the parties or by public sale.

(6) If sale is by way of public sale, this matter shall be continued pending entry of the decree confirming the sale and a final decree after the Special Commissioners have filed their accounting before the Commissioner in Chancery and the same has been approved.