**Norfolk**

SARA GIBBS MCLAUGHLIN

v.

EDWIN WILLIAM MCLAUGHLIN

No. 0904-85

Decided July 1, 1986

464

COUNSEL

Edward T. Caton, III (Caton and Koch, P.C., on brief), for appellant.

Grover C. Wright, Jr. for appellee.

OPINION

**BAKER, J.**—This is an appeal by Sara Gibbs McLaughlin (wife) from a final decree of divorce entered by the trial court which denied her request for a divorce and spousal support from Edwin William McLaughlin (husband). In addition, the decree awarded husband a divorce on the ground of desertion and made an equitable distribution award to wife based on evidence contained in the record as to the value of husband's military pension.

Wife asserts that the trial court erred when:

(1) it denied her prayer for spousal support and for divorce on the ground of cruelty;

(2) it found that husband was entitled to a divorce on the ground of desertion; and

(3) it, first, awarded an inadequate marital distribution sum and, second, permitted that sum to be paid in monthly installments, without interest, and failed to make any unpaid balance chargeable against husband's estate.

For the reasons hereinafter set forth, we affirm.

I.

On December 8, 1983, wife filed a bill of complaint which alleged that husband had been guilty of cruelty toward her which caused her to abandon the family home on December 6, 1983. She alleged that the cruel conduct occurred "commencing on or about November 6, 1983, and continuing to the date of her leaving." The prayer of her bill sought a divorce, spousal support, custody and support for an infant child, attorneys' fees, costs and an equitable distribution of marital property.

Husband filed an answer and cross-bill denying the cruelty charged by wife and asking that wife's bill of complaint be dismissed, that he be granted a divorce on the ground of desertion, and that the marital property be equitably distributed.

On May 3, 1984, the trial court entered a decree referring the matter to a commissioner in chancery with directions to take testimony, receive evidence and make a report to the trial court con-

cerning all matters well pleaded.

On February 3, 1985, the commissioner conducted an *ore tenus* hearing, received stipulations and exhibits, and heard the testimony of the parties and their witnesses. On May 8, 1985, he filed a report in the clerk's office of the trial court.

The commissioner reported that the parties and their witnesses appeared before him in person after proper notice and that all jurisdictional requirements were proved. His report further stated that wife's testimony and that of her witnesses offered to support the allegations of cruelty and desertion lacked sufficient corroboration; therefore he found "that the complainant (wife) deserted and abandoned the defendant without just cause or provocation on December 6, 1983." The report then recommended that a divorce *a vinculo matrimonii* be granted to husband pursuant to Code § 20-91(6), and that wife's bill of complaint be dismissed.

Wife excepted to the portions of the commissioner's report of which she now complains. Husband's exceptions to that report asserted that the equitable distribution award should not be a charge against his estate, and that payments of the award should be made if and when the pension monies are in hand. The trial court overruled wife's exceptions and sustained the exceptions made by husband.

Wife's brief on appeal sets forth thirteen separate assignments of error which are combined and adequately stated in the second paragraph of this opinion. We will review the applicable law and evidence relating to the allegations of error in the order as there set forth.

## II.

Where the evidence is heard by a commissioner and not *ore tenus* by the trial court, the decree is not given the same weight as a jury verdict, *Hoffecker* v. *Hoffecker*, 200 Va. 119, 124, 104 S.E.2d 771, 774-75 (1958), but if the decree is supported by substantial, competent and credible evidence in depositions, it will not be overturned. *Capps* v. *Capps*, 216 Va. 382, 384, 219 S.E.2d 898, 899 (1975). Moreover, a judgment of the trial court will not be set aside on the ground that it is contrary to the law and the evidence unless it appears from the evidence that such judgment is plainly

wrong or without evidence to support it. Code § 8.01-680.

█ The misconduct of an offending spouse which will justify the other in leaving must be so serious that it makes the relationship intolerable or unendurable. *Hoback* v. *Hoback*, 208 Va. 432, 436, 158 S.E.2d 113, 116 (1967).

> The law does not permit courts to sever marriage bonds and to break up households merely because husband and wife, through unruly tempers, lack of patience and uncongenial natures, live unhappily together. It requires them to submit to the ordinary consequences of human infirmities and unwise selections, and the misconduct which will form a good ground for legal separation must be very serious and such as amounts to extreme cruelty, entirely subversive of the family relations, rendering the association intolerable.

*Hoffecker*, 200 Va. at 125-26, 104 S.E.2d at 776 (1958) (quoting *Butler* v. *Butler*, 145 Va. 85, 88, 133 S.E. 756, 757 (1926)).

A review of the bill of complaint discloses that the stated ground upon which wife sought a divorce from husband was for conduct which occurred only during an approximate thirty day period immediately prior to the time she left the marital abode. Her bill of complaint set forth the following allegation:

> Defendant has been cruelly abusing the plaintiff and specifically commencing on or about November 6, 1983, when he was physically abusive, causing reasonable apprehension of bodily hurt and thereafter continuing from time to time and more specifically, on or about November 23, 1983, when he again physically abused the plaintiff. When she attempted to protect herself by locking a bedroom door he broke down the door, came into the room where she was and again physically abused her, causing her to fear for her safety, and finally on December 3, 1983, violently threw her breakfast away from her ordering that she no longer eat in her home, all requiring the plaintiff to abandon her home and separate from the defendant on December 6, 1983.

The parties were married on June 27, 1964. According to the bill of complaint, husband's alleged cruel acts commenced "on or about November 6, 1983," almost twenty years after the

marriage.

In September, 1983, wife confronted husband with a statement that she was unhappy with the marriage and that divorce seemed to be the solution to her unhappiness. Husband testified that this was not a new suggestion, for as long ago as 1976 she had expressed a desire to end the marriage. He further testified, without denial by wife, that she stated that she had made a mistake twenty years before when she married him.

To support the claims quoted above from her bill of complaint wife testified that after she had spoken to husband concerning a divorce he became angry and ordered her from their bedroom; that he angrily broke a chair in her presence; that he physically removed her from her son's bedroom; that he ripped the comic pages from her hand; that he broke in a door to a bedroom in which she was having a private telephone conversation; that he closed their joint bank accounts and placed the monies therefrom in his name only; that on one occasion he threw her breakfast against the wall when she refused to cook for him; and that he took the children out to dinner to celebrate the parties' daughter's sixteenth birthday without inviting her.

No one saw husband break the chair, but he admitted slamming it to the floor during an argument. He admitted taking her by the arm and removing her from their son's bedroom, but asserted that no unusual force was used. Wife did not claim injury or produce evidence of the use of force which made marks at any place on her body. Their eighteen year old son corroborated husband grabbing the comics from wife's hand, but described the incident as one in which wife was in equal fault. Husband admitted breaking the door but stated that he lost his temper when he overheard wife talking on the phone to a recently divorced friend of hers and saying words from which it might be inferred that she was looking for an excuse to leave rather than attempting to rectify an unhappy situation. Husband explained the birthday dinner incident by noting that wife had earlier celebrated their daughter's birthday to his exclusion, and added that in view of the tense parental situation it was better to separately celebrate the birthday.

The evidence supports the judgment of the trial court that wife did not prove cruelty on the part of husband and for this reason,

that portion of the decree is affirmed.

## III.

The marriage lasted twenty years. Prior to September 1983, there was no evidence of any act by husband which wife claimed to be cruelty. Nor was there evidence that husband at anytime struck wife or that she was in fear that he intended to harm her.

The following, taken directly from the commissioner's report, discloses his response to a question which the decree of reference required him to report on:

Does the evidence support the alleged ground upon which relief is sought, and is there sufficient corroboration of such evidence independently of the admissions of the parties in the pleadings or otherwise?

The plaintiff's testimony and that of her witnesses in support of her allegations of cruelty and desertion is, in the opinion of the Commissioner, lacking sufficient corroboration, and the Commissioner therefore finds that the complainant deserted and abandoned the defendant without just cause or provocation on December 6, 1983. Corroboration of the fact that the complainant did move from the marital domicile on December 6, 1983 is corroborated by several of the witnesses particularly Ethel M. Gibbs, Virginia McLaughlin and Edwin W. McLaughlin, a son of the parties.

We reject wife's assertion that it could be inferred from the language used by the commissioner in his report that he found husband guilty of cruelty, and that he was only dissatisfied with her corroborative evidence. Consideration of the total evidence heard by the commissioner does not support such inference.

As with any statutory divorce ground, a cruelty allegation must be established by corroborated evidence, independent of party admissions. Code §§ 20-99(2) and (3); *Martin* v. *Martin*, 202 Va. 769, 774, 120 S.E.2d 471, 474 (1961); *Westfall* v. *Westfall*, 196 Va. 97, 102, 82 S.E.2d 487, 489 (1954); *see also Raiford* v. *Raiford*, 193 Va. 221, 235, 68 S.E.2d 888, 897 (1952). The testimony of the children did not corroborate *cruelty* commencing "on or about November 6, 1983." It is obvious that both the commissioner and the trial judge had the right from the evi-

dence to conclude that long before November 6, 1983, wife had become dissatisfied with the marriage and began laying plans to bring about a divorce. This, if she chose, she had the right to do, but having done so she cannot now claim that the acts of husband justified her action in leaving on December 6, 1983.

We interpret the commissioner's report, approved by the trial court, to mean that wife had not proved the allegations of cruelty made in her bill of complaint.

The evidence supports the provisions of the decree of the trial court that the leaving of the marital home by wife was willful and with intention to abandon husband. Therefore, the judgment denying spousal support to wife and granting husband a divorce is affirmed. *See* Code § 20-107.1; *cf. Thomasson* v. *Thomasson*, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983).

### IV.

Finally, wife alleges that the monetary award "as her share of husband's vested retirement income, is inadequate." In addition, she asserts that the trial court erred in holding that the periodic payments would be made without interest on the unpaid balance of the monetary award and that on husband's death any unpaid portion of the monetary award would not be a charge against his estate.

Wife made no claim in the trial court that the commissioner misused or failed to consider any factor he was required to consider in determining the amount of the monetary award. This may have been because, as shown by the record, the parties had agreed between themselves upon the distribution of other marital assets. The established rule in Virginia is that parts of the commissioner's report not excepted to are "considered as admitted to be correct," as the party excepting " 'must put his finger on the error' that the court may see what it has to decide." *Cralle* v. *Cralle*, 84 Va. 198, 201, 6 S.E. 12, 13 (1887). It is too late to do so for the first time on appeal. *Id*. In this appeal, we consider only whether, under the facts of this case, an award to wife of a sum equal to approximately forty percent of the value of the pension was an equitable distribution; and whether the trial court erred in holding that the award was to be paid without interest and that any portion of the monetary award which was not paid at husband's death would not

be a charge against his estate.

In his report recommending a lump sum award of $60,000, the commissioner advised the court how he had arrived at that recommendation:

[T]he Commissioner wishes to point out to the court that this recommendation with reference to the monetary award ($60,000.00) has been based upon *the defendant's anticipated net disposable retirement income per month.* (emphasis added).

He thus made it clear that the basis for this monetary award was the estimated value of the pension.

In taking exception to the commissioner's report, counsel for wife noted "that the lump sum award to plaintiff (wife), as to her share of the defendant's vested retirement income, is inadequate." Therefore, we consider only whether the lump sum award is inadequate as her share of the vested retirement benefit and do not consider any other property.

At the commissioner's hearing, Leonard Frieden, an actuarial expert, testified that the present value of husband's military pension was $205,293.87. Frieden noted that seventeen and one half years of husband's twenty-five year naval career (nearly seventy percent) occurred during the marriage. Hence, at the time of the filing of the suit the portion of the pension's value deemed marital property was approximately seventy percent of its total, or $143,705.10. Husband's monthly pension check was $1,731. Based on these calculations, the commissioner determined that wife's share should be forty percent and rounded the recommended award to the $60,000 which the trial court approved. We here note that the evaluations of present values of vested pensions are based on life expectancies which may vary.

The parties separated on December 6 and suit was filed on December 8, 1983. On those dates, trial courts were authorized to grant monetary awards payable in lump sums or over a period of time in fixed amounts. Code § 20-107.3(D). The amount of the award and method of payment were to be determined after consideration of several listed factors, among which was the present value of pension or retirement benefits. Code § 20-107.3(E)(8).

But any monetary award based upon the value of the pension could not "become effective until the party against whom such award is made actually begins to receive such benefits," and no such award may "exceed fifty percent of the cash benefits actually received by the party against whom such award is made." Code § 20-107.3(G). Because the monetary award was based on benefits to be received as a pension, such payments would not be due until the payments were received. It would be illogical to require interest to be paid on sums before they become due. On the death of husband his pension benefits would cease. Awards based on the value of pensions shall be payable "only as such benefits are payable." Therefore, the trial court correctly ruled that the pension award should not be chargeable against husband's estate in the event of his death prior to the payment of the total award.

The trial court did not abuse its discretion in the method used to determine the estimated value of the pension fund, nor in its ruling that the award would not bear interest or be chargeable against husband's estate.

Finding no error in the rulings of the trial court, its judgment is affirmed.

*Affirmed.*

Barrow, J., and Hodges, J., concurred.