COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Willis and Annunziata
Argued at Salem, Virginia


JIMMY McCUE DAVIS

                                    MEMORANDUM OPINION[*] BY
v.   Record No. 1819-97-3       JUDGE ROSEMARIE ANNUNZIATA
                                          JUNE 2, 1998
BRENDA JOYCE SHELTON DAVIS

            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                    Jonathan M. Apgar, Judge

        Stephen B. Hebblethwaite for appellant.

        James V. Doss, III, for appellee.


        Jimmy McCue Davis (husband) appeals the decree of the

circuit court, challenging the court's finding that Brenda Joyce

Shelton Davis (wife) was not at fault in the dissolution of the

marriage and the court's rulings as to equitable distribution and

spousal support.  Wife also challenges the court's rulings on

equitable distribution and spousal support.[1]  Because we find

that the trial court abused its discretion in fashioning the

equitable distribution award, we affirm in part and reverse in

part.

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

[1]Husband argues that we should not consider the questions
presented by wife because wife did not file a Notice of Appeal.
Husband's argument is without merit.  "[A]dditional questions
separate from those presented by the appellant, and any
additional relief sought separate from that requested by the
appellant, may be raised by the appellee in [her] brief."
D'Auria v. D'Auria, 1 Va. App. 455, 461, 340 S.E.2d 164, 167
(1986).

The parties were married on June 25, 1966, and separated on March 7, 1996. Wife worked outside the home during the initial years of the marriage, but began to experience seizures in 1970, and stayed at home to take care of the parties' children. Wife underwent surgery which cured her seizures in 1993. Husband worked for the same employer from 1970 through the parties' separation, and accumulated $11,000 in savings bonds purchased through his employer. In 1995, husband withdrew more than $21,000 from the parties' joint bank account, and gave $10,000 to wife.

Beginning in late 1995 or early 1996, wife routinely refused to have sexual intercourse with husband, but the parties, nonetheless, continued to have sexual intercourse every two or three weeks until the week prior to the parties' separation. On March 3, 1996, husband overheard wife having a suggestive phone conversation with another man. Husband overheard a similar conversation on March 6. Husband confronted wife about the phone conversations, and wife told husband that she had arranged to have a man call the house in an effort to make husband jealous. After an argument in which the police intervened, the parties separated permanently.

After a hearing, the trial court granted wife a divorce on the basis of one year's separation, and refused to find constructive desertion or adultery as alleged by husband. The trial court ordered an equal division of the parties' property.

2

The trial court ordered the parties to sell the marital home and some personal property, and to divide the proceeds. The trial court assigned a value to the parties' remaining assets, allocated the personal property and intangible assets to the parties, and ordered husband to pay wife an amount necessary to divide the marital property equally. The trial court also ordered husband to pay wife spousal support in the amount of $175 per week.

Under familiar principles, we view the evidence in the light most favorable to the party prevailing on that issue below. Gottlieb v. Gottlieb, 19 Va. App. 77, 81, 448 S.E.2d 666, 669 (1994) (citing Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222-23, 372 S.E.2d 411, 415 (1988)).

## I.

## Marital Fault

Husband argues that the trial court erred in refusing to grant him a divorce on the ground that wife was guilty of constructive desertion. The trial court declined to award husband a divorce based on constructive desertion, and granted wife a divorce based upon the parties' separation. A court's finding that no constructive desertion has occurred will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. Alls v. Alls, 216 Va. 13, 14, 216 S.E.2d 16, 17 (1975) (citing White v. Perkins, 213 Va. 129, 134, 189 S.E.2d 315, 319 (1972)).

3

Husband first contends that wife unjustifiably refused sexual intercourse, and thus was guilty of constructive desertion. "[T]he willful withdrawal from sexual intercourse, when accompanied by willful breach and neglect of other marital duties, is considered a general withdrawal from the duties of the marital relationship, and, if without just cause or excuse, constitutes desertion." Petachenko v. Petachenko, 232 Va. 296, 299 n.*, 350 S.E.2d 600, 602 n.* (1986) (citing Albert v. Albert, 137 Va. 1, 3-4, 119 S.E. 61, 61 (1923)); see also Jamison v. Jamison, 3 Va. App. 644, 648, 352 S.E.2d 719, 722 (1987). "A mere denial of sexual intercourse, where other marital duties are performed, does not constitute desertion." Petachenko, 232 Va. at 299, 350 S.E.2d at 602.

The evidence supports the refusal of the trial court to find constructive desertion based on the withdrawal of sexual intercourse. Husband testified, "we had sex the week before we split." He also testified, "every two or three weeks we'd have sex." As nothing in the record suggests that husband had sex with wife without her consent, this testimony establishes that wife did not refuse to have sexual intercourse with husband.

Husband also contends that wife was guilty of constructive desertion because she attempted to convince husband that she was having an affair. A party may be guilty of cruelty amounting to constructive desertion if he or she inflicts "mental anguish, repeated and unrelenting neglect and humiliation . . . upon an

4

unoffending spouse." Hoback v. Hoback, 208 Va. 432, 436, 158 S.E.2d 113, 116 (1967) (citing Hoffecker v. Hoffecker, 200 Va. 119, 125-26, 104 S.E.2d 771, 776 (1958)). "The misconduct of an offending spouse which will justify the other in leaving must be so serious that it makes the relationship intolerable or unendurable." McLaughlin v. McLaughlin, 2 Va. App. 463, 467, 346 S.E.2d 535, 537 (1986) (citing Hoback, 208 Va. at 436, 158 S.E.2d at 116).

Wife admitted that she arranged for suggestive phone conversations with a man in an attempt to make husband jealous. The trial court found that the relationship was not intolerable, noting that husband did everything he could to save the marriage, and had sexual intercourse with wife within the week before the separation. The evidence supports the trial court's finding that wife's conduct did not rise to the level of constructive desertion.

## II.

### Valuation

Husband contends that the trial court erred in valuing the parties' 1995 Ford F350 pickup truck at a value of $20,000. "The trial court's valuation cannot be based on 'mere guesswork.'" Bosserman v. Bosserman, 9 Va. App. 1, 5, 384 S.E.2d 104, 107 (1989) (quoting Taylor v. Taylor, 5 Va. App. 436, 443, 364 S.E.2d 244, 248 (1988)). We will not disturb a trial court's finding of the value of an asset, however, unless the finding is plainly

wrong or unsupported by the evidence. See Traylor v. Traylor, 19 Va. App. 761, 763-64, 454 S.E.2d 744, 746 (1995).

At the time of trial, husband owned a 1995 four-wheel drive F350 truck with a V-8 engine and an eight-foot bed. Husband paid $20,922 for the truck two years before the trial. After purchasing the truck, husband improved the truck by adding a truck hitch, new rear bumper, and a bed liner. Based on NADA Blue Book values, wife argued that the truck was worth $22,125. Husband introduced evidence that the truck had a value of $13,125.

The court assigned the truck a value of $20,000. The NADA Blue Book page introduced by wife showed a base value of $16,700 for a standard cab F350 pickup truck with an eight-foot bed. The Blue Book showed an additional $2,200 in value for four-wheel drive, but did not list values for the additional improvements husband made to the truck. According to the Blue Book, therefore, the truck was worth $18,900 plus the value of the bed liner, rear bumper, and truck hitch. We find that the trial court's $20,000 valuation of the truck, which is between the values argued by the parties, is supported by the evidence. See Zipf v. Zipf, 8 Va. App. 387, 395, 382 S.E.2d 263, 268 (1989).

### III.

### Equitable Distribution

Husband contends that the trial court erred in fashioning an equitable distribution award. "Fashioning an equitable

6

distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it."  Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

At trial, wife introduced an appraisal of the parties' personal property.  Wife also introduced an exhibit entitled "Personal Property Taken after Separation," listing marital property she alleged was in the possession of husband, including $11,000 in savings bonds, four withdrawals of funds in the amounts of $10,000, $2,900, $3,031, and $5,506, and $20,649.  Wife also submitted to the court a list of personal property which she wanted in the equitable distribution.  Husband introduced a list of personal property that he was interested in purchasing for one-half of its appraised value.

In the Final Decree, the trial court wrote, "After careful consideration of Section 20-107.3 of the Code of Virginia, as amended[,] and all those factors listed thereunder, it is ORDERED that the martial [sic] property be divided equally considering the length of their marriage and the monetary and non-monetary contributions contributed by the respective parties to the marriage and the well being of the property."  To accomplish this equal division of the property, the court assigned to husband a tractor, a truck, and a van worth a total of $48,765.  The court assigned to husband three savings accounts worth $7,320, U.S. savings bonds worth $11,000, two withdrawals of $2,900 and $3,031

7

made in May 1995 (for a total of $5,931 of May withdrawals), and a withdrawal of $5,506 made in March 1995. The court assigned to wife a car worth $6,000, a withdrawal of $10,000 made by husband in May 1995, and personal property that she requested worth $4,949. The trial court found wife's allegations "concerning the value of 'missing' personal property without merit."

This allocation of assets gave husband a value of $78,552, wife a value of $20,949, and the unallocated personal property a value of $8,413. The court ordered the unallocated personal property, as well as the marital home, to be sold and the proceeds divided between the parties. The court ordered husband to pay wife $25,801.50 from the proceeds of the sale of the marital home, which represents one-half of the difference between husband's $78,522 in assets and wife's $20,949 in assets, adjusted by $3,000 for outstanding marital debt.

A.

Personal Property

Husband argues that the trial court erred in awarding wife the items of personal property she requested, but not awarding him the items he requested. We hold that the trial court did not abuse its discretion in awarding the items of personal property. At trial, husband offered to buy certain items of personal property at one-half the appraised price. The trial court awarded husband six items of personal property, including the parties' tractor, plus two unrequested items, worth a total of

8

$20,765. Husband cites no authority for his claim that he was entitled to the property he requested, rather than one-half of the value of the property, and we have found none. "Th[e] division or transfer of jointly owned marital property and the amount of any monetary award, subject to the enumerated statutory factors, is within the sound discretion of the trial court." Dietz v. Dietz, 17 Va. App. 203, 216, 436 S.E.2d 463, 471 (1993) (citing Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992)). Under the facts of this case, we will not disturb the trial court's exercise of its discretion.

Wife argues that the trial court erred in refusing to award her one-half of the value of the personal property that she alleged husband had taken. Wife testified that she made a list of items she believed were missing from the parties' storage building, and assessed the value of the items at their purchase price.

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (citing Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986)). Wife alleged that husband had taken an enormous amount of hardware, including 100 pounds of washers, 200 screwdrivers, 30 torque wrenches, and 20 crow bars. Wife acknowledged that in

formulating her list of missing items, she considered all the hardware that the parties had accumulated over the course of thirty years. Wife testified that valuing the hardware at the purchase prices was appropriate because "they were in good shape because he took care of his tools," but contradicted this testimony by stating that husband "would leave his tools laying out in the floor."

Husband testified that he had hauled some trash away from the parties' barn to the dump, but denied taking hardware or equipment out of the barn. Husband introduced evidence that a number of the items on wife's list of missing property were actually listed as part of the appraised property. Husband also disputed that the parties had ever owned many of the items shown on wife's list. As wife's counsel conceded at oral argument, the trial court was entitled to accept the testimony of husband, and reject the testimony of wife. Street, 25 Va. App. at 387, 488 S.E.2d at 668 (citing Bridgeman, 3 Va. App. at 528, 351 S.E.2d at 601). Considering the lack of support for wife's allegations of missing hardware and husband's denial of removing any hardware, we find that the evidence supports the trial court's finding that wife's allegations of missing property are false.

B.

Allocation of Funds Withdrawals

Husband argues that the court erred in assigning him the March 1995 withdrawal of $5,506, the May 1995 withdrawals of

10

$5,931, and the $11,000 in savings bonds, in the absence of a finding of waste. Each of the monetary transfers at issue took place at least nine months before the separation of the parties. Over the course of husband's employment, he purchased a number of U.S. Savings Bonds with a total value of $11,000. Husband told wife that he might use the bonds to finance the purchase of his truck, which husband bought in April 1995. Husband used the $11,000 to pay for the parties' truck.

Husband withdrew $5,506 from the parties' joint account in March 1995. Husband did not know exactly what he purchased with the money, but he stated that he used it for the marital home. Husband withdrew $2,900 from the parties' joint account on May 16, 1995, which he spent on building materials for the parties' house, garage, and barn. Husband withdrew $3,031 from the parties' joint account on May 31, 1995, and placed the $3,031 into an account in his name, which he had at the time of the separation. Wife did not know of the existence or details of any of these withdrawals.

We find that the trial court's allocation of the $3,031 to husband is supported by the evidence. Husband acknowledged that he had withdrawn the money from a marital account, and had the money at the time of separation.

Husband argues that the trial court employed a "waste" analysis to apportion the value of the savings bonds and the $2,900 and $5,506 withdrawals to husband. There is no evidence

11

that these funds existed at the time of separation. "Normally, only property owned by the parties at the time of the last separation is classified as marital property." Booth v. Booth, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988) (citing, inter alia, Code § 20-107.3(A)(2)(ii)). If one party has dissipated assets in anticipation of divorce, however, a trial court may hold "the party who last had the funds . . . accountable for them." Id. Although the trial court did not explicitly find waste, we find that the trial court implicitly used this reasoning in apportioning the non-existent $11,000, $5,506, and $2,900 amounts to husband.

"'[W]aste' may generally be characterized as the dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy." Id. at 27, 371 S.E.2d at 572 (citing In re Marriage of Smith, 448 N.E.2d 545 (Ill. App. Ct. 1983)). We hold that the trial court abused its discretion in allocating the $11,000, $5,506, and $2,900 amounts to husband because the legal requirements of waste were not satisfied. There is no evidence that husband dissipated these assets in anticipation of divorce or separation. More importantly, there is no evidence that the funds were spent for a purpose unrelated to the marriage.

The only evidence on the use of the funds was that they were spent on the marital home or truck. The only evidence on the

12

issue shows that husband spent a total of $8,406 in withdrawals for improvements to the marital home, a marital purpose. Because the $8,406 was spent on improvements to the marital home, the money was distributed equally in the trial court's equal division of the proceeds of the sale of the house. Similarly, the only evidence on the issue shows that husband used the $11,000 derived from the savings bonds to buy marital property, i.e., the truck. This money was accounted for in the equitable distribution of the truck to husband. By allocating funds previously spent on marital assets in the equitable distribution award, the trial court effectively allocated these funds twice: once as withdrawals and savings bonds, and once as the marital home and truck.

Wife argues that the trial court erred in assigning her the $10,000 withdrawal made by husband in April 1995. We find that the trial court's allocation of $10,000 to wife is supported by the evidence. The evidence shows that husband withdrew $10,000 from the parties' joint account and gave the money to wife, although she denied receiving it. Husband testified without objection that wife had testified in prior proceedings that she still possessed the $10,000 husband gave her. Finally, wife acknowledged that she had $10,000 in a savings account at the time of separation.

On the grounds stated above, we remand the issue of equitable distribution to the trial court to redetermine the

13

equitable distribution of the property of the parties which was in existence at the time of the separation.

## IV.

## Spousal Support

Because we remand for redetermination of the equitable distribution award, we must also remand for redetermination of spousal support.  See, e.g., Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1997).  Because the spousal support issues raised by the parties are unlikely to arise on remand, we decline to address those issues.

<u>Affirmed in part, reversed in part.</u>

14