# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

City of Fredericksburg

v.

Gordon Franklin Yarboro et al.

## Case No. CH96-507

BY JUDGE WILLIAM H. LEDBETTER, JR.

### December 11, 1998

The sole question before the court in this easement case is whether a settlement agreement, reached by the parties on December 11, 1997, is enforceable.

### *Background*

Because no evidence has been presented, the facts recited are gleaned from the pleadings, papers in the court file, and representations of counsel in oral arguments on December 7, 1998.

In its bill of complaint, the City of Fredericksburg seeks to enjoin interference with its right of way between State Route # 619 and property owned by Fredericksburg around the Motts Run reservoir. Fredericksburg claims that it acquired the access by various deeds in the 1960s and by a 1970 court order in a condemnation suit. The defendants own the properties that the right of way allegedly traverses.

The case was referred to a commissioner in chancery, who scheduled an evidentiary hearing for December 11, 1997. On the morning of the hearing, the parties reached a compromise settlement. Because they were at the commissioner's office and a court reporter was present, counsel stated the

terms of the agreement for the court reporter. The recitation was transcribed with an exhibit attached. In essence, the agreement relocated Fredericksburg's right of way and allocated the costs of the proceeding among the parties.

In order to understand the relocation, a few additional "facts," yet unproved, must be noted.

Apparently, the original right of way begins on Route 619 (Mill Road); runs across a small segment of what is now Lot 10 of Turkey Run Estates, owned by the Boyces; then onto Lot 9 of Turkey Run Estates, owned by the Copenhavers; and finally onto and across Lot 8 of Turkey Run Estates, owned by the Yarboros. On Lot 10, the easement crosses the Boyces' gravel driveway. On Lot 9, the Copenhavers' well is situated within the easement. Traversing Lot 8, the easement crosses the Yarboros' driveway, cuts through their residence, and meanders across the rear of that parcel onto a tract of land owned by Fredericksburg.

Under the terms of the settlement, the point of origin of the easement would be shifted to Lot 8 at Route # 619. The new easement is almost completely on Lot 8 running, for the most part, along the southern boundary of Lot 8. At some places, a portion of the thirty-foot wide easement is on Lot 9. Thus, the relocation would remove the easement entirely from Lot 10, would avoid the well on Lot 9, and would bypass the dwelling on Lot 8. The new easement would be a "permanent easement." The agreement also provided for a "temporary easement," at a slightly different location, to be used by Fredericksburg until it improves the "permanent easement."

Further, the parties agreed that the new easement would be surveyed and duly recorded in the land records, that the suit would be dismissed, and that Fredericksburg would "abandon" and "quitclaim" its original right of way "to the appropriate parties."

The agreement also provided that the new easement "will be unobstructed at all times."

In accordance with the agreement, Fredericksburg caused the surveyor to create a new plat showing the new easement. That plat, dated January 6, 1998, shows an electrical transmission box squarely within the new easement. The box sits on Lot 8 near Route # 619 where the easement connects with the public road. The box does not appear on the July 15, 1997, plat upon which the parties sketched the new easement in conjunction with their agreement.

### Current State of the Case

When the transmission box appeared on the new plat, Fredericksburg told the defendants to remove it. The defendants refused, citing the $2,700.00 cost

quoted by Virginia Power to move it. Fredericksburg then filed a motion asking the court to enforce the parties' agreement and to compel the defendants to remove the transmission box.

The court heard arguments on December 7, 1998.

All parties agree that the only hindrance to a full resolution of this controversy is the transmission box. Fredericksburg contends that the agreement of December 11, 1997, should be enforced and the defendant should be compelled to remove the box because it is an "obstruction" under the terms of the agreement. The Yarboros likewise contend that the agreement should be enforced, but they argue that the box is Fredericksburg's problem since Fredericksburg knew or should have known that the box was there when the agreement was made. The Copenhavers also ask the court to enforce the agreement, but they point out that, because the box is not located on their property, they should not have to bear any responsibility for its removal. The Boyces' argument is similar to that of the Copenhavers. Further, the Copenhavers and the Boyces suggest that the court find a fair "middle ground" by which the new easement could become reality and the dispute over the box could be resolved.

### Decision

It is elementary that mutuality of assent, or a "definite meeting of the minds," is an essential element of all contracts, including compromise settlement agreements. The minds of the parties must meet upon the terms of the agreement. However, the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. *Marefield Meadows v. Lorenz*, 245 Va. 255, 427 S.E.2d 363 (1993). Generally, one who makes an agreement is bound by its terms, and ignorance of the terms does not affect the liability of such person under the contract. Stated differently, if the words of a party, reasonably interpreted, manifest an intention to agree, his contrary unexpressed state of mind is immaterial. *Lucy v. Zehmer*, 196 Va. 493, 84 S.E.2d 516 (1954).

Here, the parties clearly understood, in good faith, that they had reached a compromise settlement of their dispute on December 11, 1997. Their agreement relocated the right of way to the satisfaction of everyone involved. The relocated right of way was hand-sketched on an existing plat with the understanding that a new plat would be prepared to show the precise courses and distances of the new easement. The parties agreed that the new easement would be unobstructed.

However, it is also clear that Fredericksburg did not mean to establish a new easement with a transmission box in the middle of it, making the right of way practically unusable; nor did the defendants intend to agree that the easement would be unobstructed if in fact the easement was already obstructed. The parties' true intentions regarding the matter cannot be determined from the terms of the agreement because the agreement does not mention the box and the plat upon which they sketched the new easement contains no reference to it.

Given the present status of the case, the court cannot enforce the agreement. As noted above, the agreement, transcribed by the court reporter, makes no reference to the transmission box. The plat attached to the agreement, upon which the parties illustrated the location of the new easement, does not show the transmission box. Why was the box not mentioned in the agreement or shown on the plat? Did the parties address the issue at all during their discussions? If not, why not? Was it because no one was aware of its existence? Was it because those who knew of its existence were confused, uncertain, or mistaken about its location? Or did everyone know about the box but consciously ignore it? Application of the appropriate principles of contract law necessitates answers to all or at least some of these questions. The questions cannot be answered without the presentation of evidence.

The court regrets that it cannot fashion some plausible and binding solution to the parties' quandary. However, for the reasons explained, the court must apply well-settled contract principles to Fredericksburg's motion for specific performance and those principles cannot be applied without awareness of the facts and circumstances surrounding the compromise settlement.

Accordingly, the parties should coordinate dates and confer with this office to arrange a time for an evidentiary hearing.

In the alternative, the parties may wish to abandon their efforts to enforce the compromise settlement and proceed to present evidence to the commissioner in chancery with respect to the issues raised in the suit.

For the reasons stated, Fredericksburg's motion to specifically enforce the parties' compromise settlement will be denied.

· December 18, 2000

The question presented is whether Edward B. Coe and Rebecca L. Coe, or their successors, must be added as parties to this litigation or were their

interests in the subject property extinguished thirty years ago in a condemnation proceeding.

## Background Facts

The City of Fredericksburg instituted this suit in 1996 to enjoin interference with an access easement between Route # 619 and property it owns around Motts Run Reservoir. The defendants own the properties that the right of way supposedly traverses.

After the parties were at issue, the case was referred to a commissioner in chancery. On the day scheduled for that hearing, December 11, 1997, the parties reached a compromise settlement. For reasons explicated in an opinion letter dated December 11, 1998, the court held that the settlement was unenforceable, and directed the parties to proceed with the litigation.

The case went back to the commissioner who held an evidentiary hearing on May 13, 1999. At that hearing the Copenhavers asserted that all necessary parties were not before the court. The commissioner agreed and filed an "interim report" recommending that Edward B. Coe and Rebecca L. Coe be added as parties. Fredericksburg filed an exception to the report. Arguments were presented on November 14, 2000. This opinion addresses that matter.

The source of the instant problem is a condemnation suit filed by Fredericksburg in 1969 to acquire property around Motts Run Reservoir and an access easement from Route # 619 to that property. Fredericksburg already had purchased other persons' interests in the property. In the condemnation suit, Fredericksburg sought the undivided one-sixth interests of two minors, Edward B. Coe and Rebecca L. Coe, in the easement area.

A guardian ad litem was appointed for the minors. By order dated December 29, 1970, the court approved and confirmed a settlement awarding specified sums to each of the minors in exchange for their interests in the property, including the access easement. The order directed that the money be deposited with the general receiver, to be held for the minors on conditions set out in the order. The guardian ad litem endorsed the order.

## Decision

The court is of the opinion that the condemnation order of December 29, 1970, extinguished the interests of the minors in the property at issue.

It is elementary that a guardian ad litem must be appointed to protect the interests of a defendant who is a minor. Virginia Code § 8.01-9; see also § 25-46.13. That was done.

It is said that even where a guardian ad litem is appointed, gross irregularities in the proceedings may vitiate any decree involving a minor party (except perhaps as to a bona fide purchaser of property sold under the decree). See *Rhea v. Shields,* 103 Va. 305, 49 S.E. 70 (1904). Here, there is no suggestion of fraud or gross irregularities in the appointment of the guardian ad litem or in the condemnation proceedings themselves.

Finally, it is well settled that courts have statutory authority to approve compromises of claims by and against minors "in any action or suit." Virginia Code § 8.01-424. In the condemnation suit, the court specifically approved and confirmed the settlement.

Next, the Copenhavers argue that the settlement could not be effective or binding upon the minors because by its terms Fredericksburg acquired a fee simple interest in the land whereas in its condemnation petition Fredericksburg sought just an easement. The court knows of no authority for the proposition that a court-approved compromise, otherwise valid, is nonetheless void if the terms of the settlement go beyond the allegations and prayers for relief in the original pleading. Such a holding would put form over substance, since a simple amendment to the original petition immediately prior to the settlement would have cured the defect.

Therefore, the court holds that Edward B. Coe and Richard L. Coe are not necessary parties to this suit because their interests were properly extinguished in the 1970 condemnation order. Accordingly, Fredericksburg's exception to the commissioner's report is sustained, the report is rejected, and the parties are directed to proceed.