# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

City of Fredericksburg

v.

Gordon Franklin Yarboro et al.

November 6, 2001

Case No. CH96-507

BY JUDGE WILLIAM H. LEDBETTER, JR.

This protracted litigation requires the court to determine the nature, width, and location of a right-of-way.

In the 1970s, the City of Fredericksburg built a reservoir on Motts Run in Spotsylvania County. The reservoir enabled Fredericksburg to impound water to supplement its municipal water supply if and when needed.

In conjunction with the creation of the reservoir, Fredericksburg acquired tracts of land from members of the Coe family. The acquisition was accomplished, at least with respect to all adult owners of the Coe properties, by two deeds, one dated November 22, 1968, and the other dated July 3, 1969. In addition, Fredericksburg needed access to these tracts from the end of Route 619. The Coes owned land between Route 619 and the reservoir area. Thus, the two deeds also conveyed to Fredericksburg "an easement of right of way for access, ingress and egress" over a road depicted on a plat, made by Martin Clifford & Associates, attached to each deed.

Two members of the Coe family were minors. In order to acquire their interests, Fredericksburg filed a condemnation suit. A guardian ad litem was appointed for the minors. An agreement was reached regarding just

compensation. The court approved the agreement and vested fee simple title in Fredericksburg, the condemnor, to the tracts and to the right-of-way, by final order dated December 29, 1970.

About 15 years later, a residential development known as Turkey Run Estates was created on some of the former Coe lands traversed by Fredericksburg's right-of-way. Lots 8, 9, and 10 of the subdivision, owned by the respective defendants, are directly affected.

Fredericksburg commenced this suit on September 25, 1996, seeking injunctive relief against interference with its right-of-way.

The case was referred to a commissioner in chancery. On the day of the hearing, the parties announced that they had reached a compromise settlement. For reasons explained in an opinion letter of December 11, 1998,[1] the court held that the "settlement" was unenforceable. That holding was incorporated in an order dated February 2, 1999. The parties were directed to proceed with the litigation.

The case went back to the commissioner who held an evidentiary hearing on May 13, 1999. At the hearing, some of the defendants contended that all necessary parties were not before the court. The commissioner agreed. He filed an interim report recommending that the two minors who were defendants in the condemnation proceeding be added as parties in this proceeding. Fredericksburg filed an exception. After arguments, the court issued a letter opinion finding that the condemnation proceeding extinguished the interests of the minors and, therefore, they are not necessary parties to this suit. That opinion, dated December 18, 2000,[2] was reflected in an order entered February 8, 2001.

Again, the case went back to the commissioner. The commissioner filed a report on April 24, 2001, addressing all issues. All parties filed exceptions to portions of the report. The court heard arguments on those exceptions and took the case under advisement.

### Commissioner's Report

Although the report of a commissioner does not have the weight given to a jury verdict, Virginia Code § 8.01-610, it is entitled to respect. *Higgins v. Higgins*, 205 Va. 324, 136 S.E.2d 793 (1964). As to factual findings, the report should be accepted as prima facie correct, so that such findings should be disturbed only if they are plainly wrong and without support in the record.

---

[1] This opinion is printed at 54 Va. Cir. 612. [Reporter's Note]
[2] This opinion is printed at 54 Va. Cir. 615. [Reporter's Note]

*Raiford v. Raiford*, 193 Va. 221, 68 S.E.2d 888 (1952); *Jamison v. Jamison*, 3 Va. App. 644, 352 S.E.2d 719 (1987). This principle applies with particular force where the commissioner has seen, heard, and evaluated the witnesses in the case at first hand. *Gilman v. Gilman*, 32 Va. App. 104, 526 S.E.2d 763 (2000).

Here, the commissioner conducted an evidentiary hearing where he saw, heard, and evaluated the witnesses. Thus, his report is entitled to great weight and should be rejected only if his factual findings are plainly wrong and not supported in the record or if he has applied erroneous principles of law.

## Parties

The commissioner reports that all parties in interest are properly before the court. That conclusion is undisputed except with regard to the two Coe minors who were the defendants in the 1970 condemnation case. That issue was addressed in the opinion letter of December 18, 2000, and the order of February 8, 2001. As noted, the court is of the opinion that the condemnation effectively extinguished the Coe minors' interests in the subject property. Their interests were properly protected by a guardian ad litem; the court expressly approved the compensation agreement; and no evidence has been offered to show that the proceeding was tainted by fraud or gross irregularity.

## Location of the Right-of-Way

The plats attached to the deeds by which Fredericksburg acquired 4/6s of the right-of-way depict the access road from the terminus of Route 619 (Point A) to a point on property at the reservoir (Point B). The plat, prepared by Martin Clifford & Associates, contains no metes and bounds description of the road.

The same plat was attached to the condemnation petition, except that it had been revised to include a metes and bounds description along with the following reference: "Containing 1.47 acres within the boundaries of a 30-foot Right of Way." The final order in the condemnation suit vests fee simple title in Fredericksburg as described in the petition and the exhibits attached to it.

At the commissioner's hearing, William W. Webb, Jr., a licensed land surveyor, testified about the location of the right of way. He presented a plat dated July 16, 1997 (City Exhibit "I") which he said depicts the location of the right-of-way. His location of the right-of-way, he said, was based on extensive field work, notes of Martin Clifford & Associates, and earlier plats, including the plat attached to the deeds, the revised plat attached to the

condemnation petition, and the subdivision plat of Turkey Run Estates. Although his delineation was challenged, he was positive:

> I'm set in my mind that that is where the metes and bounds description is. I really have no question about it.

(Tr. p. 78.)

The commissioner located the right-of-way as shown on the Webb plat of July 15, 1997 (City Exhibit "I").

This right-of-way was created by express grants. Its location is determined by reference to the grants. When the title instruments are ambiguous or uncertain, experts may seek clarification by resorting to extrinsic information to ascertain the intention of the parties in light of the circumstances of the parties and the land at the time of the grant. See, generally, 6B M.J., *Easements*, § 7. Mr. Webb's testimony was not contradicted.

Therefore, aided by parol evidence, a proper interpretation of the grants locates this right-of-way as shown on Mr. Webb's plat of July 15, 1997, otherwise known as City Exhibit "I."

### *Nature or Scope of Use*

The instrument creating a right-of-way governs its use. Ordinarily, unless the grant provides otherwise, a person who has a right-of-way across another person's land must be allowed to enjoy it in such manner as will secure him all the advantages contemplated by the right-of-way, and it is incumbent upon the owner of the servient estate to refrain from interfering with the enjoyment of the easement.

Here, the grants creating the right-of-way clearly indicate that the road is for access, ingress and egress, between Route 619 and the reservoir. Any activity of the servient landowners that unreasonably hinders, obstructs, or interferes with that usage is impermissible.

The commissioner correctly reports that the structure on Lot 8 and the well on Lot 9 unreasonably obstruct Fredericksburg's use of its right-of-way and must be removed. The commissioner is also correct that the driveways serving Lots 8, 9, and 10, which bisect the right-of-way, do not obstruct or interfere with the right-of-way and thus do not have to be moved.

Finally, the commissioner correctly ruled that further questions about the scope of use of the right-of-way are not justiciable, since there has been no showing whatever that Fredericksburg uses, has used, intends to use, or

anticipates using the right-of-way for any purpose other than as access to the reservoir.

## Width of Right-of-Way

The dimensions of an easement created by express grant are defined by the terms of the grant. *Watts v. Johnson*, 105 Va. 519, 54 S.E. 317 (1906). Where no width is expressed in the instrument creating the easement, the determination of width is made by reference to the intention of the parties to the grant, based upon the circumstances existing at the time and affecting the property. *Waskey v. Lewis*, 224 Va. 206, 294 S.E.2d 879 (1982).

Fredericksburg acquired this right-of-way from three sources: two deeds and a condemnation suit, all of which are discussed in detail above.

Neither of the deeds, by which the adult Coes granted an access easement to Fredericksburg, contains a metes and bounds description from which the dimensions of the right-of-way can be ascertained.

Based on substantial extrinsic evidence regarding the conditions and dimensions of the road, particularly as it existed on the property near the time of the conveyance, the commissioner determined that the parties intended an access road 15 feet in width.

Upon a review of the record, the court agrees with the commissioner. The circumstances surrounding the parties and the land at the time of the grants and the conduct of the parties thereafter justify the commissioner's finding, and the court is of the opinion, that the width of Fredericksburg's right-of-way easement, acquired in the aforesaid deeds, is 15 feet.

That accounts for 2/3s of Fredericksburg's interest in the right-of-way.

Fredericksburg acquired the other 1/3 interest by virtue of the condemnation suit against the two minor Coes. Each of those children owned a 1/6 interest in the land over which the right-of-way runs.

The order approving the agreement by which the condemnation suit was compromised and concluded specifically refers to "Parcel 433A." Parcel 433A is the right-of-way. The order describes the right-of-way by reference to the petition "and the exhibits attached to the ... petition." The principal exhibit attached to the petition was a revised plat by Martin Clifford & Associates that described the right-of-way by metes and bounds and by acreage and expressly depicted it as thirty feet wide.

Hence, in the condemnation suit, Fredericksburg acquired a thirty-foot right-of-way as to the 1/3 interest held by the minors.

For the reasons explained above and in a previous opinion letter, Fredericksburg acquired a fee simple interest, not just an easement, in the condemnation suit. The final order in that case expressly says so. No one has

presented any evidence in this case by which that order, or the proceeding it concluded, can be successfully attacked on the ground of fraud, mistake, or some gross irregularity.

Therefore, because of the variations in the sources of title, Fredericksburg acquired and now owns the following interests in the right-of-way:

(A) A 1/3 fee simple interest in a 30-foot wide strip described on the plat of William W. Webb, Jr., marked City Exhibit I. This interest is owned in common with the other owners of the servient estate.

(B) An access easement, for ingress and egress between Route 619 and the reservoir, with respect to 2/3 interest of the servient estate. The easement is 15 feet wide, the location of which is located as shown on City Exhibit I.

For all practical purposes, then, the commissioner's holding that Fredericksburg's use of the right-of-way is limited to 15 feet is correct. Its interest in the other 15 feet is only a 1/3 fee interest in common with the other owners of the servient estate.

## Relocation

The commissioner declined to relocate the right-of-way in view of the pleadings and the decree of reference. However, he did observe that a relocation under Virginia Code § 55-50 might be appropriate.

The court agrees with Fredericksburg that § 55-50 is not applicable here. As noted, 1/3 of Fredericksburg's interest in the right-of-way is a fee simple interest. The relocation provisions of § 55-50 apply to easements of ingress and egress. The court has no authority to move an undivided fee simple ownership interest from one plot of land to another, no matter how tempting that solution may appear to be.

The location of an easement can also be changed by consent of the parties interested. Such consent may be implied from acts and acquiescence of the parties. See, generally, 6B M.J., *Easements*, § 22.1. Assuming that those easement principles would apply here, the commissioner found the evidence insufficient to support the defendants' contention that the parties had consensually changed the location of the right-of-way to another ascertainable place. The court agrees.

For these reasons, the court is of the opinion that the parties have not changed the location of the right-of-way and a judicial relocation under § 55-50 is unavailable under the circumstances of this case.

## Other Matters

The defendants asserted other grounds that would defeat the existence of a right-of-way at the location claimed by Fredericksburg, such as adverse possession, estoppel, and abandonment. The commissioner found no merit to any of those arguments. The court agrees, finding no adequate factual basis for any of those assertions.

## Costs and Fees

The commissioner declined to assess costs or award attorney's fees because, he said, no evidence was presented with respect to those matters. At the hearing on arguments of the parties' exceptions to the commissioner's report, the parties asked the court to make these determinations rather than refer the case back to the commissioner.

As for attorney's fees, each party will bear his own.

With respect to costs, they will be divided one-half to Fredericksburg and one-half to the defendants jointly and severally.

These costs do not include the expense incurred by Fredericksburg in obtaining the expert assistance of William W. Webb, Jr. Mr. Webb was used as an expert in the litigation by Fredericksburg, and he testified on Fredericksburg's behalf. His charges to Fredericksburg are not proper "costs" that the defendants should be compelled to share, even though Fredericksburg has used his work (especially the plat prepared by him) successfully.

## Conclusion

Fredericksburg owns a right-of-way from Route 619 to the reservoir at the location shown on City Exhibit "I." It owns a 2/3 interest as an easement and a 1/3 interest in fee simple. The width of its easement is 15 feet. The width of its fee simple is 30 feet. The centerline of both widths is as shown on the aforesaid plat. The purpose of the easement is for access to the reservoir.

Obstructions on the servient estate which unreasonably hinder free passage along the right-of-way,[3] i.e., the well and the dwelling, must be removed.

---

[3] Throughout this opinion, the court has referred to this strip, or access road, as a "right-of-way." Normally, a right-of-way is, by definition, a form of easement. One third of Fredericksburg's interest in the road is in fee simple. Mindful of that, the court nonetheless has used "right-of-way" for lack of a better term.